UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL TRUST FOR HISTORIC
PRESERVATION IN THE UNITED
STATES,

        Plaintiff,

v.

NATIONAL PARK SERVICE, et al.

        Defendants.

Civil Action No. 25-4316

## DECLARATION OF WILLIAM J. BATES

I, William J. Bates, declare as follows:

1. The facts set forth in this declaration are based upon my personal and professional knowledge, and if called as a witness in this proceeding, I could and would testify competently thereto under oath. As to those matters that reflect an opinion, they reflect my personal and professional opinion on the matter.

2. My name is William J. Bates. I have been a registered architect in the Commonwealth of Pennsylvania since 1978. I have worked in the private sector for almost fifty years and have many years of experience working with government agencies and managing government construction projects. I served as the National President of the American Institute of Architects (AIA) in 2019. I am Adjunct Professor of Architecture at Carnegie Mellon University in Pittsburgh. For more details about my professional background, I have attached my resume as Exhibit A to this Declaration.

3. I submit this Declaration in connection with the case of *National Trust for Historic Preservation in the United States v. National Park Service*. I am aware of the administration's plans to build a new ballroom in the vicinity of the White House. I understand that the administration has begun construction work in the vicinity of the White House, but has not finalized or publicized plans for the ballroom.

4. The purpose of this Declaration is to share my expertise as to the need for—and the standard practice of preparing—plans for the design of a building before construction of the building's foundation commences.

5. In my professional experience—which includes the design and construction oversight of civic buildings as well as privately owned projects—planning and design activities for the construction of buildings always precede the commencement of below-grade construction of a foundation. This is so because the below-grade foundation system establishes the structural grid, load paths, and lateral-force resisting systems that dictate the size, spacing and location of columns, shear walls, structural cores, and load-bearing elements above-grade. With respect to the proposed White House ballroom, once the foundation and related subsurface work are in place, the location, bulk, spans, bay sizes, and floor plate geometry (among other elements) of the building itself are fixed for all practical purposes. Altering these conditions after the fact would require major demolition and redesign.

6. The design of a foundation depends upon many factors—including soil bearing capacity, groundwater, settlement characteristics and seismic site classifications. Foundation type and capacity determine the maximum permissible loads and column

locations. These constraints in turn govern the allowable massing, height, occupancy loads and program details referenced above. With respect to the proposed White House ballroom, to proceed with the construction of the foundation without having designed or obtained approvals for the entirety of the project—both below ground and above ground—risks constructing a foundation that is inadequate for the project that is ultimately approved. Avoiding the risk of under-building in turn runs the risk of over-building a foundation that then requires down-sizing or revising the plan of the building. Down-sizing is often expensive and difficult, and all else equal, an overbuilt foundation makes changing plans to a smaller building significantly more difficult.

7.   The layout of the foundation also fixes life safety elements of the project such as stair and elevator cores, fire-rated shafts and points of access and exit. This is so because these elements must be anchored on and coordinated with foundation walls and pits. Travel distances for egress, exit separations, areas of refuge, and fire compartmentation are set by the subsurface work. For the White House ballroom, any changes to exit routes, occupant load or emergency access points would be difficult to accommodate after the foundation is built because core access points and exit placements would already be fixed.

8.   It is standard architectural practice that subsurface utilities and infrastructure—stormwater detention or treatment, sanitary and water services, fire service mains, electric duct banks, fuel or water tanks, geothermal wells and foundation drainage—be approved and coordinated prior to excavation. Post-foundation changes to the building may require

relocating these elements, which is not feasible once slab, pile caps and foundation walls are constructed.

9. The foundation establishes the building's structural and support points which govern the building's façade, window spacing, support of cantilevers, and the anchoring of balconies, canopies, or other projections. With respect to the proposed White House ballroom, review, consultation, and approval of the design may require changes to articulation, fenestration or projection limits in order to respect the setting of the Residence itself. With foundation and embed locations already fixed, adjustments to façade pattern, overhangs or projections—required to protect the setting of the White House itself—may not be achievable without extensive changes in the already-embedded foundation.

10. Numerous environmental requirements—stormwater management, tree protection, soils management and utility connections—affect where and how subsurface elements like foundations can be located. In a landscape that is historically significant—such as that of the President's Park—foundation and vault locations may need to be shifted to protect trees, existing historic resources such as the Executive Mansion itself, or accommodate other environmental constraints. Building the foundation prior to approval of the final design can lock the project into noncompliant configurations and restrict above-grade loading and layout options.

11. It is standard professional practice for the architect's and engineer's calculations for foundations to be predicated on defined design criteria, such as use, occupancy, structural loads and building geometry. Architects and engineers design buildings first—

according to these criteria—and, after completing the design, then plan for a foundation that supports that design. For the proposed White House ballroom, building the foundation before the design criteria have been reviewed and approved risks a mismatch between the already-built subsurface structure and the to-be-reviewed-and-approved superstructure. Finalizing and constructing a foundation before completing the building design inevitably will constrain if not eliminate the flexibility to modify elements of the building design such as program, massing, size, location, and layout.

12. The location of a building's fire protection and related utilities requires an early decision that must be coordinated with the construction of foundation walls and penetrations. Fire service mains, backflow prevention systems, pump rooms, standpipe riser locations, and fire command center access are all considerations that impose requirements on the foundation. Building a foundation must take those requirements into account, but doing so before the building itself is designed may result in a foundation that is inconsistent with the building's ultimate design. Accommodating such design changes would require extensive re-working if not complete replacement of the foundation.

13. Foundation and related subsurface work is not generic, and it is not easily modified. Such work is project-specific, and it determines what can be built above the surface. For the proposed White House ballroom to commence foundation work before review and consultation, and before obtaining required approvals, will predetermine key aspects of scale, size, location and shape of the above-grade structure. Commencing foundation work before submitting plans for review, commentary and approval will likely cause any such review, commentary or approval to be an empty exercise and preclude

5

meaningful approvals. For a meaningful review and approval process to occur after foundation construction has already commenced might well require major demolition and redesign.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

William J. Bates

Executed this 26th day of December, 2025.