UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES**, <br><br> *Plaintiff*, <br><br> v. <br><br> **NATIONAL PARK SERVICE**, *et al.*, <br><br> *Defendants.* | Civil Action No. 25-4316 |

**OPPOSITION TO DEFENDANTS' MOTION TO MODIFY SCHEDULE**

  The National Trust for Historic Preservation in the United States ("National Trust") opposes the motion of the defendants—the National Park Service ("NPS"), other federal agencies and officials, and the President (together, "Defendants")—to more than double the time allowed by this Court to submit their supplemental brief, and to delay subsequent case deadlines, including the preliminary injunction hearing scheduled for January 15, 2026. *See* ECF 22.

  The Defendants fail to mention that when they informed the National Trust of their intent to file this motion, the National Trust offered, as a professional courtesy, a one-week extension—conditioned only on the Defendants' agreement to stipulate "not to conduct any subsurface construction work on either the East Colonnade or the proposed ballroom site (other than work specifically required by national security) through the date of any PI hearing." *See* Exhibit A, 2-3. The National Trust's proposal would have accommodated the Defendants' desire for an extension while mitigating the risk of harm in the interim to the National Trust. Without explanation, the Defendants refused outright. *See id.* at 2.

  The unconditional extension requested by the Defendants would, if granted, present a serious risk of irreparable injury to the National Trust. This case is about the Defendants' ongoing

construction of a massive ballroom on the site of the most historically significant building in the country without securing the necessary approvals and without allowing the National Trust, or the public, to offer their views and comments. *See* ECF 2-1 at 15-34. While the Defendants told this Court that "there are no plans that have been finalized," Hrg. Tr. 26:10-11, just two days ago, on December 29, 2025, the President declared in a press conference that the ballroom project was "ahead of schedule."[1] And the Defendants freely concede that below-grade construction on the ballroom is expected to begin on the East Colonnade site *in January* (and on the East Wing site in February), *see* ECF 17 at 2-3—in other words, *before this Court would even hear the preliminary injunction motion*, if the Defendants' proposed extension were granted.

Put simply, the Defendants have decided to deny the National Trust and the public their right to comment on the Ballroom Project, or at least to delay the exercise of that right until enough of the Ballroom's foundation is built that any comments suggesting changes of substantial magnitude will have to overcome millions (if not tens, or hundreds of millions) of dollars in sunk project costs. *Cf. Massachusetts v. Watt*, 716 F.2d 946, 952 (1st Cir. 1983) (Breyer, J.) (recognizing that "set[ting] aside the agency's action at a later date will not necessarily undo the harm" because "[t]he agency as well as private parties may well have become committed to the previously chosen course of action" and "[i]t is far easier to influence an initial choice than to change a mind already made up"). The Defendants' conduct is illegal, wrong, and urgently needs to be enjoined at the earliest opportunity, as the National Trust has explained. *See* ECF 2-1, 22.

---

[1] Roll Call, Press Conference: Donald Trump and Benjamin Netanyahu Hold a Joint Press Event, December 29, 2025 (transcript), available at https://rollcall.com/factbase/trump/transcript/donald-trump-press-conference-joint-benjamin-netanyahu-israel-december-29-2025/ (last accessed Dec. 31, 2025).

Nonetheless, the Defendants assert that their proposed schedule "will not affect the Court's ability to resolve this motion" before below-grade construction dictates the size or design of the Ballroom. ECF 22 at 2.[2] Yet the only rationale the Defendants offer for why the Court should believe that the imminent below-grade construction will *not* affect the above-grade aspects of the Ballroom is the opinion of defendant John Stanwich. *See* ECF 22 ¶ 4 (citing ECF 14-6 ¶ 21). As far as the National Trust is aware, Mr. Stanwich is a park superintendent, not an architect. *See* ECF 14-6 ¶ 1. And his conclusory declaration offers no reason to believe that the below-grade construction will *not* dictate important aspects of the Ballroom. *See id.* ¶ 21. In sharp contrast, the former National President of the American Institute of Architects (AIA) William Bates—who *is* an architect—has explained in a detailed declaration attached to the National Trust's supplemental brief that below-grade construction *does* dictate important above-ground aspects of any major construction project, of which the ballroom is indisputably one. *See* ECF 20-2.

This motion is an equitable one, and the Court should look at what the Defendants have done, not what they say they will do. The Defendants demolished the East Wing without project plans, while keeping hidden their inadequate August 2025 Environmental Assessment ("EA") for nearly four months. Rather than submit plans for the Ballroom Project for review, the Defendants fired all the members of the Commission on Fine Arts ("CFA"), one of the two regulatory bodies charged with reviewing such plans. The Defendants then began constructing the Ballroom without giving the public an opportunity to comment, and without obtaining the required approvals of the NCPC under 40 U.S.C. § 8722(d), or Congress under 40 U.S.C. § 8106. They have, repeatedly, broken the rules first and asked for permission later. The Court should not indulge the Defendants'

---

[2] Of course, if that were the case, the Defendants could have accepted the National Trust's proposal to wait for this Court's hearing before proceeding further on construction. But they refused.

casual and repeated disregard for the law by granting them a further delay that inures only to their benefit.

Even now, the Defendants have not taken meaningful steps toward the required review and approval of the Ballroom Project. Today is December 31, 2025, yet contrary to the Court's expectation at the December 16 hearing, *see* ECF 20 at 40, the Defendants still have not submitted any plans to either the CFA or NCPC. Instead, they have merely placed the Ballroom Project on the January 8, 2026 NCPC meeting agenda as an "information presentation," without plans.[3] The Defendants continue to deny that they need to obtain express approval from Congress for the ballroom, or that there is anything wrong with their plainly inadequate EA, which they have taken no steps to fix. And they have still not appointed any new members to the CFA. *See* CFA, Who We Are, https://www.cfa.gov/about-cfa/who-we-are (last accessed Dec. 31, 2025).

The Defendants' motion can, and should, be denied on the above basis alone. But even if all that were put aside, an extension would not be warranted because the Defendants have simply offered no good reason for one. The Defendants contend relief is warranted because the National Trust filed an amended complaint, and because of certain (unspecified) arguments presented in the National Trust's supplemental brief that the Defendants claim they could not have anticipated. *See* ECF 22 ¶ 2-3. Neither justifies the Defendants' request.

As the National Trust explained in its brief, the amended complaint differs from the Trust's original complaint in only two limited respects. First, it names as defendants four officials and

---

[3] NCPC, "Tentative Agenda Items for the January 8, 2026 Commission Meeting," at 7 (updated Dec. 22, 2025), https://www.ncpc.gov/docs/Tentative_Agendas/TentativeAgenda_January2026.pdf (last accessed Dec. 31, 2025) (listing "East Wing Modernization Project" as an "[i]nformation presentation" only, with "no action requested or taken"); NCPC, Project Information, 8733 East Wing Modernization Project, https://www.ncpc.gov/review/project/8733/ (last accessed Dec. 31, 2025).

4

entities whom the Defendants claimed—for the first time in their opposition to the Trust's motion—are now in charge of the Ballroom Project. Since these are also the same officials and entities to whom the Court's third question refers (asking about "the entities directing the ballroom construction, including the Office of the Executive Residence," ECF 17 at 4), the Defendants can hardly claim surprise. Nor can the Defendants affect surprise over the associated new claim (over the Defendants' unlawful reallocation of project jurisdiction from NPS to themselves) where its substance was raised by counsel during the hearing itself (Dec. 16, 2025 Hrg. Tr. 28:20-29:13) and its existence was necessitated by the Defendants' *own argument* (*id.* at 24:17-25:7). Put simply, the Defendants suggest they are astounded that the National Trust would promptly amend its complaint for the most obvious and foreseeable reason: ensuring that this Court has jurisdiction to enter a preliminary injunction against those whom the Defendants assert are actually responsible for the problem.

Second, the amended complaint revises one of the National Trust's National Environmental Policy Act ("NEPA") claims based on facts disclosed by the Defendants in the EA—a document kept hidden from the public between when it was signed on August 28, 2025, until it was attached to the Defendants' opposition pleading at 5:00PM on the night before the December 16, 2025 hearing. *See* ECF 20 at 1-2. The "new arguments" to which the Defendants refer, ECF 22 at 2, appear to be just the portions of the National Trust's brief that enumerate the extensive inadequacies of the Defendants' EA, and why the Trust is likely to succeed on the merits as a result. *See* ECF 20 at 21-36. The Defendants also failed to inform the Court that the National Trust *removed* the NEPA segmentation claim (Count VI) from the amended complaint in light of the EA, *see* ECF 19 at 47, meaning that the total number of counts in the complaint remains unchanged.

With dazzling audacity, the Defendants now claim these relatively minor revisions—again necessitated by the Defendants' *own unlawful withholding of the EA*, and by the Defendants' *own intentional misdirection regarding who is in charge of the Ballroom Project*—warrant an extension of more than **double** the amount of time allotted to them by this Court. An exigency of the Defendants' own devising, driven by withheld documents and last-minute narrative pivots, does not warrant equitable relief. "[H]e who comes into equity must come with clean hands," *Precision Instrument Mfg. Co.* v. *Automotive Maintenance Machinery Co.*, 324 U. S. 806, 814 (1945).

Under this Court's existing January 8, 2026 response deadline, the Defendants will have had **twenty-two days** to prepare responses to the same three questions of this Court that the National Trust answered in twelve. The Defendants will also have ten days to prepare responses to the arguments in the National Trust's supplemental brief, the substance of which the Defendants should have expected long before. Indeed, this Court set an expedited briefing schedule while simultaneously inviting the parties to address "any other issues the parties wish to raise," ECF 17 at 4, recognizing that additional arguments (and any responses thereto) were to be made within that expedited timeline, not outside of it. The Defendants can hardly be heard to assert that where the National Trust played by the rules and worked through the Christmas holiday to meet its Court-imposed deadline, the Defendants cannot be required to do the same.

\*   \*   \*

The purpose of the Defendants' motion is simple: to delay this litigation while ballroom construction continues, in the hope that with enough progress, the Court will hesitate to require them to "take it down" when the National Trust succeeds, *id*. at 3. The Defendants freely admit that work is going ahead on the "East Colonnade area in January and in the East Wing area in February." ECF 14-6 ¶ 20. The Defendants have refused to stop this work either during the

6

pendency of the National Trust's motion, or during the pendency of the extended briefing delay they are now seeking. And given more time, the Defendants will continue to construct the Ballroom, to the continued risk of irreparable injury to the National Trust.

Enough is enough. For the above reasons, the Court should deny the Defendants' Motion to Modify Schedule.[4]

Respectfully submitted,

*/s/ Gregory B. Craig*
Gregory B. Craig (164640)
FOLEY HOAG LLP
1717 K Street N.W.
Washington, DC 20006.
Tel: (202) 223-1200

Thaddeus A. Heuer (*pro hac vice*)
Matthew F. Casassa (*pro hac vice*)
Jack C. Smith (1725229)
FOLEY HOAG LLP
155 Seaport Boulevard
Suite 1600
Boston, MA 02210
Tel. (617) 832-1000

Dated: December 31, 2025

---

[4] If the Court does not deny the Defendants' motion, the National Trust notes that its counsel is unavailable for a preliminary injunction hearing from January 28 to 30, 2026, due to an argument in another matter that was rescheduled to accommodate and prioritize what was understood to be the firm January 15, 2026 hearing date in this matter.

**CERTIFICATE OF SERVICE**

    I certify that on December 31, 2025, the foregoing document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent via first class mail to those indicated as non-registered participants.

                                                                   */s/ Jack C. Smith*