UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES**,<br><br>*Plaintiff*,<br><br>v.<br><br>**NATIONAL PARK SERVICE**, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-4316 |

**PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' MOTION TO STRIKE
DECLARATION OF JONATHAN B. JARVIS**

Plaintiff National Trust for Historic Preservation ("National Trust") opposes the Defendants' improper and inequitable Motion to Strike the Declaration of Jonathan B. Jarvis (the "Motion to Strike"). The National Trust submitted the Jarvis Declaration in connection with its supplemental reply brief, filed pursuant to the Court's modified scheduling order (Minute Order of Dec. 31, 2025).

The Defendants' invocation of Local Rule 65.1 is curious, as the text of the rule does not apply on its face. Even if it did, that rule would equally foreclose consideration of all of the *Defendants'* numerous supplemental declarations. Such an outcome is neither necessary nor warranted.

Local Rule 65.1(c) applies to "application[s] for a preliminary injunction," and provides that such applications "shall be supported by all affidavits on which the plaintiff intends to rely." The application for a preliminary injunction in this case was filed on December 12, 2025. ECF 2. The Local Rule further provides that any "opposition shall be served and filed within seven days after service of the application" and that the opposition shall also "be accompanied by all affidavits on which the defendant intends to rely." The Defendants' opposition was filed on

December 15, 2025.  ECF 14.  Finally, it provides that "[s]upplemental affidavits either to the application or the opposition may be filed only with permission of the Court."

The parties' most recent supplemental briefs have been submitted in accordance with the Court's request and invitation for supplemental briefing, ECF 17. That briefing cycle has included, collectively, two declarations submitted by the National Trust and five declarations from the Defendants. Including all submissions in the case thus far, the National Trust has submitted four witness declarations (and one attorney declaration), while the Defendants have submitted ten witness declarations.

All parties have clearly proceeded with the mutual understanding that the Court's request and invitation for supplemental briefing—on both specified questions as well as "any other issues the parties wish to raise," ECF 17 at 4—encompassed the Court's permission to file supplemental affidavits in furtherance thereof under Local Rule 65.1. The government's belated suggestion otherwise—after having submitted five such supplemental declarations itself—is as puzzling as it is disingenuous.

The Defendants then cite cases that applied Local Rule 65.1 to cases in which it plainly applied—a routine briefing pattern where the Court determined that all declarations ought to have been submitted in connection with the parties' initial papers. But for the same reason the Local Rule argument is misplaced, neither do these cases speak to the situation here: none of Defendants' authorities involved a Court-ordered supplemental briefing schedule in which *both* parties had already submitted supplemental filings and supplemental declarations, and where the Court expressly authorized the filing of a supplemental reply.

Nonetheless, to the extent any further permission is required for the Court's consideration of the Jarvis Declaration, good cause readily warrants the Court's acceptance here. In connection

with their supplemental opposition brief, the Defendants submitted <u>five</u> supplemental declarations, including a <u>second</u> declaration of Jessica Bowron, Comptroller of the National Park Service exercising the delegated authority of the Director of the National Park Service, as well as a Declaration of Joshua Fisher, who has been identified for the first time in connection with the supplemental opposition as the official "responsible for managing the East Wing Modernization Project," ECF 30-1 ¶ 4. Ms. Bowron's second declaration opines on both factual circumstances and legal authority that purportedly supports the lawfulness and regularity of the Defendants' conduct in funding and managing the ballroom project. *See* Supplemental Declaration of Jessica Bowron (ECF 30-3), ¶¶ 5-7, 9-13.

Jonathan Jarvis served as Director of the National Park Service for eight years, the culmination of a career with the Park Service that spanned 40 years altogether. He is uniquely positioned to rebut Mr. Fisher's and Ms. Bowron's new assertions in their supplemental declarations. Mr. Jarvis's declaration does so by (1) pointing out portions of Ms. Bowron's cited statutory authorities that she omits, (2) highlighting other relevant authorities that she (and the National Park Service's environmental assessment) has neglected, and (3) providing context and historical examples for the National Park Service's regular operations (including with respect to the issues of accepting philanthropic gifts, conducting NEPA reviews, and the agency's involvement with projects at the White House and President's Park), which are inconsistent with the new assertions made by Ms. Bowron in her supplemental declaration.

In his Declaration, Mr. Jarvis also responds to unfounded or misleading arguments in Defendants' Supplemental Opposition, challenging Defendants' claim that the environmental assessment's conclusion of a finding of no significant impact ("FONSI") was reasonable and sufficiently explained; taking issue with the claim that the Office of the Executive Residence was

uniquely qualified to manage the Project; pointing out that NPS practice was *never* to delay publication of an environmental assessment; calling attention to the fact, first revealed in Mr. Fisher's declaration, that the Defendants were aware of hazardous waste at the former East Wing and yet made no mention of the environmental harms from such waste in the National Park Service's August 2025 environmental assessment—all this in direct response to Defendants' Supplemental Opposition and multiple supplemental declarations.

Defendants argue that Mr. Jarvis's declaration should not be permitted because "it invites the Court to consider extra-record evidence," ECF 35 at 2, which the Defendants contend is improper here in reviewing APA claims. As an initial matter, the argument that "the Court's review at th[is] juncture will be circumscribed to the administrative record lodged by the agency," ECF 35 at 2, would render most if not all of the Defendants' own declarations equally baseless.

But putting aside that the Defendants have submitted ten witness declarations in this matter—ironically, including several specifically to opine on the National Park Service's NEPA review and legal bases for its actions—this argument is also entirely beside the point: Mr. Jarvis is not providing facts to supplement the administrative record of the agency's action here. It is undisputed that he was not serving at the National Park Service at the time of the preparation of its environmental assessment for the ballroom project. Rather, he responds to Ms. Bowron's and Mr. Fisher's assertions of legal authority and factual background, including on issues not specific to the National Trust's NEPA claims, such as the National Park Service's authority to receive philanthropic gifts and the relative expertise of the Office of Executive Residence and the National Park Service in managing large construction projects.

The Defendants next take issue with the relevance of the timing of Mr. Jarvis's tenure at the National Park Service, but they point only to changes in regulations that his declaration *does not cite or rely on*, while they conspicuously fail to acknowledge the continued force of the several sources he *does* refer to, including Director's Order 12, Director's Order 21, the agency's statutory stewardship mission, NEPA statutory authority, and the Redwood Amendment at 54 U.S.C. § 100101(b)(2).

The Defendants' final attempt to dislodge the Jarvis Declaration fares no better. They contend that Mr. Jarvis provides his views only as to why the National Park Service's environmental assessment "was insufficient," but claims that the relevant inquiry is instead "whether the agency action was reasonable and reasonably explained." ECF 35 at 3. If there is meaningful daylight between these two positions, it is awfully dim. But nonetheless, the Defendants have entirely failed to grapple with the content of the Jarvis Declaration, which, for example, 1) identifies the agency's failure to properly consider significant the many identified adverse effects (i.e., unreasonable action), 2) observes the failure to scrutinize project requirements that predetermine outcomes and foreclose alternatives (i.e., unreasonable action), and 3) identifies the environmental assessment's "failure to evaluate" (i.e., failure to explain, reasonably or otherwise) the environmental harms from what the Defendants have now conceded are toxic substances present in the former East Wing that were known to them at the time of the preparation of the environmental assessment. *See* ECF 33-1 ¶¶ 6, 29; ECF 30-1 (Fisher Decl.) ¶ 9.

The Court should deny the Defendants' improper motion to strike. Having introduced new issues and new facts in their own supplemental briefing, Defendants now seek to prevent the National Trust from using its reply for its intended purpose: pointing out Defendants' own

omissions and errors to the Court. And ironically, applying the authority they invoke on the terms they suggest would equally eviscerate their own submitted supplemental declarations. There is no equitable reason for the government to seek to preclude the Court from considering the rebuttal testimony of the former Director of the National Park Service on issues and arguments raised for the first time by the Defendants' own supplemental papers—including the supplemental declaration of their own National Park Service representative.

To the extent further endorsement is needed, the Court should readily find good cause to consider *all* of the parties' submitted declarations nunc pro tunc, so that it may consider the full body of evidence brought to bear by the parties.

Respectfully submitted,

*/s/ Gregory B. Craig*
Gregory B. Craig (164640)
FOLEY HOAG LLP
1717 K Street N.W.
Washington, DC 20006.
Tel: (202) 223-1200

Thaddeus A. Heuer (*pro hac vice*)
Matthew F. Casassa (*pro hac vice*)
Jack C. Smith (1725229)
FOLEY HOAG LLP
155 Seaport Boulevard
Suite 1600
Boston, MA 02210
Tel. (617) 832-1000

Dated: January 21, 2026

**CERTIFICATE OF SERVICE**

      I certify that on January 21, 2026, the foregoing document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent via first class mail to those indicated as non-registered participants.

                                                          */s/ Jack C. Smith*