UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES**,<br><br>    *Plaintiff*,<br><br>v.<br><br>**NATIONAL PARK SERVICE**, *et al*,<br><br>    *Defendants*. | Civil Action No. 25-4316 |

## MOTION TO STRIKE DEFENDANTS' MOTION FOR STAY PENDING APPEAL

The National Trust for Historic Preservation in the United States ("National Trust") moves for an order striking the Defendants' motion, ECF 39, for a stay of a preliminary injunction not yet entered in this case pending a theoretical forthcoming appeal that the Defendants state they intend to take to the D.C. Circuit, *see id.* at 1.[1]

Taken as styled, the Defendants' motion for a stay of a not-yet-existing order pending a not-yet-existing appeal is premature and speculative. *See, e.g.*, *United States v. Microsoft Corp.*, No. 98-1232, 2000 U.S. Dist. LEXIS 23752, at *1 (D.D.C. June 13, 2000) (stay motion premature where "no notice of appeal has yet been filed"). But that is not the motion's most troubling attribute.

Taken for what it actually is—an unauthorized and belated sur-reply attempting to reargue the merits weeks after briefing closed—the motion should be stricken entirely. *See Crummey v. SSA*, 794 F. Supp. 2d 46, 62 (D.D.C. 2011) ("The Local Rules of this Court contemplate that there

---

[1] Pursuant to Local Civil Rule 7(m), the National Trust has conferred with counsel for the Defendants, who oppose the National Trust's motion.

ordinarily will be at most three memoranda associated with any given motion: (i) the movant's opening memorandum; (ii) the non-movant's opposition; and (iii) the movant's reply.").

***The Defendants' Motion is Premature.*** To start, there is no present basis whatsoever for a stay pending a non-existent appeal. As the Court is well aware, there is nothing for the Court to stay, because no preliminary injunction has been entered. There is no appeal during which any such stay could remain in force, because there is no order for the Defendants to appeal. And, most importantly, the Defendants cannot know now whether they will be "irreparably injured absent a stay" of a preliminary injunction that does not yet exist. ECF 39 at 1 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The Defendants nevertheless speculate that *any* preliminary injunction will "imperil the President and others who live and work in the White House." *Id.* at 2. But the National Trust has repeatedly and explicitly requested that the Court craft any injunction to ensure the safety of the President, *see, e.g.*, ECF 33 at 25; ECF 20-4; Jan. 22, 2026 Hrg. Tr. 21:7-11, and the Court is more than capable of permitting safety-critical construction to continue while prohibiting the Defendants from erecting a massive ballroom on the East Wing site, or carrying out construction work that will effectively determine its location, size, bulk, and features.

The Defendants also seek to bolster their speculative motion by submitting yet *another ex parte* declaration.[2] But the National Trust's fundamental point remains consistent: No number of

---

[2] The *ex parte* declaration filed with the Defendants' motion is the third they have filed in these proceedings for *in camera* review. *See* ECF 13, 25, 40. Each has been lodged with no more than several hours' notice to the National Trust, and without even a general explanation of its contents—despite the fact that, in *publicly filed documents*, the Defendants have all but admitted that the classified declarations concern a bunker at the East Wing site. *See* ECF 30 at 41. While the Defendants at least sought leave to file their initial declaration, the latter two have been submitted without leave and whenever it suits their interests.

Although the Defendants' decision to litigate in this manner has severely limited the National Trust's ability to respond to these declarations, the National Trust has repeatedly made clear that

2

*ex parte* declarations can change the fact that the *Ballroom itself* is not necessary for national security or the personal safety of the President—the Defendants have never claimed as much, and could not honestly do so. *Cf.* Preliminary Injunction, *Revolution Wind, LLC v. Burgum*, No. 25-cv-02999 (D.D.C. Jan. 12, 2026), ECF 63 (issuing a preliminarily injunction against the government's stop-work order as to offshore wind project, notwithstanding "national security" rationales provided through *ex parte in camera* review); Minute Order, *Empire Leaseholder LLC v. Burgum*, No. 26-cv-00004 (D.D.C. Jan. 15, 2026) (similar); Minute Order, *Sunrise Wind LLC v. Burgum*, No. 26-cv-00028 (D.D.C. Feb. 2, 2026) (similar).[3]

In short, nothing other than baseless speculation suggests the Defendants will be irreparably harmed if any preliminary injunction is not stayed. That is reason enough alone for the Court to decline to consider the motion. The time to seek a stay is *after* the preliminary injunction (if any) is entered, *after* an appeal (if any) is taken, and *after* the Defendants determine, having seen and reviewed any preliminary-injunction order, that there is *an actual, good-faith basis* to seek a stay. The mere prospect of an adverse ruling—faced by every party against whom a preliminary injunction is sought—does not suffice.

***The Defendants' Motion Is an Unauthorized Sur-Reply and Should Be Stricken.*** The Court should go further and strike the Defendants' motion because the motion is principally

---

it does not question the Defendants' good-faith invocations of national-security concerns. *See, e.g.*, Dec. 16, 2025 Hrg. Tr. 17:24-18:8; ECF 33 at 25. It is equally clear, however, that there is no good-faith national-security need for a 90,000-square-foot ballroom on the site of the East Wing.

[3] The other claimed "harms"—the "unsightly excavation site" caused by the Defendants' own lawless behavior, and the fact that a preliminary injunction would frustrate the Defendants' inability to continue flouting the law to "advance[]" their unilateral determination of "the public['s] interest," *id.* at 2—amount to no more than a barely veiled request for a license to continue violating the Constitution and numerous federal laws.

devoted to presenting, yet again, the Defendants' arguments—old and new—against the National Trust's preliminary-injunction motion. *See* ECF 39 at 2-7.

It is far too late for that now. The Defendants have had ample opportunity, over two briefs, ten affidavits, three *ex parte*, *in camera* declarations, and two hearings, to fully air their arguments as for why the Ballroom Project—despite its patent illegality—can proceed. The rules forbid them from using a premature motion for a "stay" as a sur-reply to help themselves to one last chance at having the last word and to shore up arguments they should have addressed much earlier. *See Crummey*, 794 F. Supp. 2d at 62.

But that is exactly what the Defendants seek to do. They rehash their prior arguments: that the National Trust lacks standing, *see* ECF 39 at 5; that the Ballroom Project is authorized by statute, *id.* at 6; and that the Office of the Executive Residence is not an agency, *id.* at 5. Even more improper is their supplementation of those arguments with new ones that should have been raised at the hearing at the very latest—not in an unauthorized sur-reply filed more than a week and a half later. *See, e.g.*, *id.* at 6 (addressing Congress's § 8106 authorization of construction of bonsai facilities raised in the National Trust's Reply, *see* ECF 33 at 12-13); *id.* (addressing the "Court's skepticism" at the preliminary-injunction hearing of "how the [Ballroom] Project was funded"[4]); *id.* at 3 (addressing, in context of irreparable harm, the "Court['s] state[ments] at the hearing that

---

[4] The Defendants' argument on this point, ECF 39 at 6-7, is not only untimely, but also relies on several new authorities, including a nearly fifty-year-old committee hearing whose substance the Defendants misrepresent. *See id.* (citing, *inter alia*, Hrg. Before the Subcomm. on Employee Ethics and Utilization of the Committee on Post Office and Civil Service, *Authorization for the White House Staff*, Serial No. 95-10 (April 26, 1977)). The full exchange in the committee hearing references "another" Interior Department "account," which the Defendants appear to equate, without any explained basis, with the account in which gift funds are presently held. *See Authorization for the White House Staff* at 21. In any event, as the transcript makes clear, the contemplated use of the account was funding "care of the *grounds*" of President's Park. *Id.* (emphasis added).

4

it believes the allegations here are sufficient for Article III purposes"); *id.* at 6-7 (raising new arguments about the National Park Service's donation authority).

Such sharp practice should not be countenanced by this Court. The National Trust requests that the Court strike the Defendants' motion to stay any preliminary injunction pending appeal as an unauthorized sur-reply. If the Court declines to strike the motion, the National Trust reserves its right to respond to the Defendants' motion (or any subsequent motion seeking a stay pending appeal) as is appropriate after a preliminary-injunction order issues, in accordance with the Local Civil Rules.

                        Respectfully submitted,

                         */s/ Matthew F. Casassa*
                        Gregory B. Craig (164640)
                        FOLEY HOAG LLP
                        1717 K Street N.W.
                        Washington, DC 20006.
                        Tel: (202) 223-1200

                        Thaddeus A. Heuer (*pro hac vice*)
                        Matthew F. Casassa (*pro hac vice*)
                        Jack C. Smith (1725229)
                        FOLEY HOAG LLP
                        155 Seaport Boulevard
                        Suite 1600
                        Boston, MA 02210
                        Tel. (617) 832-1000

Dated: February 4, 2026

## **CERTIFICATE OF SERVICE**

      I certify that on February 4, 2026, the foregoing document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent via first class mail to those indicated as non-registered participants.

                                              */s/ Matthew F. Casassa*