**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES**, <br><br> *Plaintiff*, <br><br> v. <br><br> **NATIONAL PARK SERVICE**, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-4316 |

**OPPOSITION TO DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

The Defendants have moved for a stay of a not-yet-existing preliminary injunction pending the resolution of a not-yet-existing appeal that they intend to take to the D.C. Circuit if this Court orders them to pause their illegal construction of a massive ballroom on the White House grounds. *See* ECF 39.

As the National Trust for Historic Preservation in the United States ("National Trust") has already explained, the Defendants' motion is premature and, because it serves for all practical purposes as an unauthorized sur-reply, it should be stricken. *See* ECF 41.

But if the Court declines to strike the Defendants' motion, the motion should be denied. The Defendants have not met their burden to show that the Court should "exercise [its] discretion" to grant the "extraordinary remedy" of a stay pending appeal. *United States v. Abass*, 779 F. Supp. 3d 1, 4-5 (D.D.C. 2025) (quoting *M.M.V. v. Barr*, 459 F. Supp. 3d 1, 4 (D.D.C. 2020)). Unless and until an actual injunction is issued, the Defendants cannot know whether they will suffer irreparable harm (or any harm at all) without a stay of that injunction—which is a "necessary prerequisite" to obtaining relief, *KalshiEX LLC v. CFTC*, 119 F.4th 58, 64 (D.C. Cir. 2024) ("[A] showing of irreparable harm is a necessary prerequisite for a stay."). The Defendants' invocation

of national-security concerns does not change that calculus: The National Trust has repeatedly made clear its willingness to accommodate national-security imperatives, *see, e.g.*, ECF 41 at 2; ECF 33 at 25; ECF 20-4; Jan. 22, 2026 Hrg. Tr. 21:7-14, and pausing construction of the *Ballroom* will not endanger either national security or the personal safety of the President.

The Defendants' failure to meet their burden as to irreparable harm is "fatal" to their stay motion. *Abramowitz v. Lake*, No. 25-5314, 2025 U.S. App. LEXIS 25947, at *4 (D.C. Cir. Oct. 6, 2025) (per curiam) (explaining that failure to show irreparable harm is "fatal" (quoting *KalshiEX*, 119 F.4th at 64)).

But even if the Court could look past that failure (and it cannot, *see id.*), the remaining factors—namely, whether the Defendants are "likely to prevail on the merits on appeal;" whether "other parties will not be substantially harmed by the entry of a stay;" and the public interest, *Abass*, 779 F. Supp. 3d at 4-5—also disfavor a stay. Permitting construction of the Ballroom to proceed after finding that the National Trust is likely to succeed on the merits would license the Defendants' illegal conduct and enable the Defendants to continue unlawfully sidelining both the public and the public's representatives in Congress.[1] If the Court does find that construction of the Ballroom has been undertaken without constitutional or statutory authority—as the Defendants' motion presumes—such an outcome would be neither sensible nor defensible. The Defendants' motion should therefore be denied.

---

[1] Granting a stay would also reward the Defendants' efforts to moot the National Trust's claims. The President himself has recently asserted that the National Trust's suit is "too late" and that there is "no practical or reasonable way to go back." Donald J. Trump (@realDonaldTrump), Truth Social, *available at* https://truthsocial.com/@realDonaldTrump/posts/115956692372915783 (Jan. 25, 2026) (capitalization removed). That is wrong, but it epitomizes the Defendants' approach to the Ballroom Project: break the law first, and then declare nothing can be done about it later.

**I.    The Defendants Cannot Show That They Will Suffer Irreparable Harm Without A Stay Pending Appeal.**

As the National Trust has already explained, *see* ECF 41 at 2-3, the Defendants cannot possibly know whether they will be "irreparably injured absent a stay" of a preliminary injunction that does not yet exist, ECF 39 at 1 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)), let alone meet their burden to show as much, *see KalshiEX*, 119 F.4th at 64.

Because a showing of irreparable harm is a "necessary prerequisite" for the Defendants to obtain a stay pending appeal, the Defendants' premature motion can—and should—be denied on the basis of that failure alone. *Id.*; *see Abramowitz*, 2025 U.S. App. LEXIS 25947, at *4; *Fed. Educ. Ass'n v. Trump*, No. 25-5303, 2025 U.S. App. LEXIS 25013, at *3 (D.C. Cir. Sept. 25, 2025) (per curiam) (explaining that the government's failure to show irreparable harm "alone dooms its request" for a stay pending appeal); *Coal. for Humane Immigrant Rights v. Noem*, No. 25-5289, 2025 U.S. App. LEXIS 23767, at *2 (D.C. Cir. Sep. 12, 2025) (Walker, J. concurring) (concurring in denial of government's motion to stay where "[t]he district court's order impose[d] no irreparable harm").

The Defendants attempt to cure this "fatal" flaw in their motion, *KalshiEX*, 119 F.4th at 64, by speculating that *any* preliminary injunction will "imperil the President and others who live and work in the White House," ECF 39 at 2. But the National Trust has repeatedly and explicitly urged the Court to design any injunction it issues to *ensure* the safety of the President. *See, e.g.*, ECF 41 at 2; ECF 33 at 25; ECF 20-4; Jan. 22, 2026 Hrg. Tr. 21:7-14. And the Court is more than capable of permitting safety-critical work to continue while prohibiting the Defendants from erecting a massive ballroom on the East Wing site or carrying out construction activity that will effectively determine its location, size, bulk, and features, *see* ECF 20-4.

The Defendants' filing of yet another *ex parte* declaration—their third in this action—makes no difference. *See* ECF 40. While the Defendants appear to claim that this newest declaration demonstrates that their national-security concerns cannot be accommodated by *any* injunction the Court might enter, ECF 39 at 2, no number of *ex parte* declarations can change the fact that the *Ballroom itself* is not necessary for national security or the personal safety of the President. The Defendants have never claimed as much, and they could not honestly do so. *Cf.* Preliminary Injunction, *Revolution Wind, LLC v. Burgum*, No. 25-cv-02999 (D.D.C. Jan. 12, 2026), ECF 63 (issuing a preliminarily injunction against the government's stop-work order as to offshore wind project, notwithstanding "national security" rationales provided through *ex parte in camera* review); Minute Order, *Empire Leaseholder LLC v. Burgum*, No. 26-cv-00004 (D.D.C. Jan. 15, 2026) (similar); Minute Order, *Sunrise Wind LLC v. Burgum*, No. 26-cv-00028 (D.D.C. Feb. 2, 2026) (similar).

It is important to be unambiguously clear: The National Trust takes national security and the safety of the President seriously. But the absence of a massive ballroom on the White House grounds has not prevented any past president from residing in the White House during his tenure in office over the past two centuries. And it has not prevented President Trump from continuing to live at the White House since the demolition of the East Wing, either.

There is no reason to believe that an injunction pausing the Defendants' construction of the *Ballroom* will endanger national security or the President's personal safety. *See KalshiEX*, 119 F.4th at 64 ("Irreparable harm must be both certain and great, and actual and not theoretical." (cleaned up)). And the Defendants have identified no other irreparable harm to themselves or the public requiring a stay pending appeal. *See* ECF 39 at 2-3. Because the Defendants have failed to meet their burden to show that they will suffer irreparable harm in the absence of a stay, their

4

motion must be denied. *See KalshiEX*, 119 F.4th at 64; *Abramowitz*, 2025 U.S. App. LEXIS 25947, at *4.

## II. The Defendants Cannot Show That The Remaining Factors Favor A Stay Pending Appeal.

Given the Defendants' failure to show that they will suffer irreparable harm without a stay, the Court need not consider the other three factors. *See KalshiEX*, 119 F.4th at 64; *Fed. Educ. Ass'n*, 2025 U.S. App. LEXIS 25013, at *5-6 (explaining that "[b]ecause it was the government's burden to demonstrate irreparable harm, it would be entirely appropriate to go no further" after concluding the government had failed to meet that burden). But even if the Court were to reach the remaining factors, each would weigh against a stay. *See Abass*, 779 F. Supp. 3d at 4-5.

### A. The National Trust Will Be Irreparably Harmed by a Stay Pending Appeal.

The National Trust has already demonstrated how it and its members will be irreparably harmed in the absence of a preliminary injunction pausing construction on the Ballroom, *see, e.g.*, ECF 20 at 36-42; ECF 33 at 24-25; ECF 2-3. This demonstration is more than sufficient to show that the Trust and its members will be "substantially harmed" by a stay of such an injunction pending appeal, *Abass*, 779 F. Supp. 3d at 4-5.

Despite acknowledging that above-grade construction on the Ballroom Project is set to begin as early as April, the Defendants claim that the harm to the National Trust somehow remains "too conjectural" and "not sufficiently imminent." *See* ECF 39 at 4.[2] That is wrong, and ignores that the Defendants' *own final plans for the Ballroom*, recently submitted to NCPC and CFA, remain disproportionate and overscaled (and will also irreversibly damage the east façade of the

---

[2] In fact, above-grade work on the Ballroom Project may begin even *earlier* than the originally projected April 2026 date. Just last week, President Trump announced that the Ballroom Project is "ahead of schedule." Donald J. Trump (@realDonaldTrump), Truth Social, *available at* https://truthsocial.com/@realDonaldTrump/posts/116047799547098230 (Feb. 10, 2026).

5

Executive Residence, *see* ECF 20 at 31-32);[3] that the Defendants' own engineer does not contemplate anything more than "modest changes" to the Ballroom's massing after above-grade work begins, *see* ECF 33 at 21-22 (citing ECF 30-4 ¶ 10); and that the President himself claims that it is now "too late" to stop the Ballroom Project.[4]

Equally unavailing is the Defendants' assertion that Dr. Hoagland—a longtime National Trust member, professional historian, and historic-preservation expert who lives in D.C. and regularly visits the White House area for professional and personal reasons—will not be injured by the Ballroom even if it is completed according to the present plans. ECF 39 at 3 (citing *Env't Def. Fund v. FERC*, 2 F.4th 953, 970 (D.C. Cir. 2021)). As the National Trust has already explained, Dr. Hoagland has described precisely the particularized and continuing use of a specific public place that supports aesthetic injury and, at this stage, irreparable harm—especially where that harm is tethered, as here, to procedural violations. *See* ECF 33 at 4-5; ECF 20 at 36-41; ECF 2-3 ¶¶ 15-16.

### B. The Public Interest Disfavors a Stay

The Defendants' attempts to invoke the public interest fare no better. *See* ECF 39 at 2-3; *Abass*, 779 F. Supp. 3d at 5. It is plainly not in the public's interest to have itself and its representatives in Congress systematically and unlawfully excluded from the decisionmaking

---

[3] The Defendants submitted revised plans to NCPC and CFA on February 13, 2026. *See* NCPC, East Wing Modernization Project, *available at* https://www.ncpc.gov/review/project/8733/ (last visited Feb, 17, 2026) (describing "requested action" as "approval of preliminary and final site and building plans"); CFA, CFA Meeting – 19 February 2026, available at https://www.cfa.gov/records-research/record-cfa-actions/2026/02/cfa-meeting (last visited Feb. 10, 2026). Although the revised plans have removed a pediment that was the subject of a CFA member's concern, the plans are, as far as the National Trust can ascertain from the available renderings, otherwise substantially unchanged.

[4] Donald J. Trump (@realDonaldTrump), Truth Social, *available at* https://truthsocial.com/@realDonaldTrump/posts/115956692372915783 (Jan. 25, 2026).

process involving the most substantial exterior construction project in over a century to one of the country's most historically significant buildings, simply so the Defendants can carry out their illegal construction without authorization or meaningful review. *See League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations'" (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)); *Ramirez v. U.S. Immigration & Customs Enf't*, 568 F. Supp. 3d 10, 34 (D.D.C. 2021) (similar); *see also* ECF 2-1 at 38-39. The Defendants' principal response is that the public's interest in national security supports the continued construction of the Ballroom—but as the National Trust has already explained, there is no national-security justification for the Ballroom, *see supra* I.

It is even more difficult to take seriously the Defendants' other efforts to blunt the public's clear interest in pausing the Ballroom Project until the Defendants comply with the law. The damage to the White House "turf" and "irrigation systems" that might occur if temporary tents are pitched on the White House lawn while an appeal is pending, *see* ECF 39 at 2-3, does not come close to outweighing the public's interest in ensuring that large-scale modifications to *the White House itself* are made only after Congress has authorized them, and only after all the necessary reviews have been completed. The reduction of unidentified "strain" on the White House likewise does not move the needle, while most of the other supposed "improvements" cited by the Defendants seemingly pertain to the already-completed demolition of the East Wing. *See id.* And the Defendants cannot use the existence of an "unsightly excavation site" that they themselves created by their own unlawful actions, *id.* at 2, as justification to continue to construct the Ballroom in violation of the law, *see* ECF 33 at 24-25.

### C. The Defendants Have Failed to Show that They Are Likely to Succeed on Appeal.

The Defendants cannot show that they have a substantial likelihood of success on the merits of their appeal. *Abass*, 779 F. Supp. 3d at 4-5. Because no preliminary injunction has issued, it is axiomatic that the Defendants cannot identify what, if any, portions of that currently-nonexistent preliminary-injunction order they believe to be erroneous. Rather, the Defendants simply rehash their arguments against the National Trust's motion for a preliminary injunction, *see* ECF 39 at 5-7. But this gets the Defendants nowhere. The National Trust has already explained why it has standing to sue, *see* ECF 33 at 1-5; *see also* ECF 2-1 at 34-37; why the Office of the Executive Residence is an agency for the purposes of the Administrative Procedure Act, *see* ECF 20 at 16-21; ECF 33 at 5-8; and why, regardless, the Defendants have no constitutional or statutory authority whatsoever to construct the Ballroom, *see* ECF 33 at 8-15, 22-24; ECF 20 at 9-16; ECF 2-1 at 31-33; *see generally* ECF 20-1.

For the most part, the Defendants fail to engage with these arguments, and the few new points that they make are inconsequential. The relevant question is not whether the private donations that the Defendants have illegally funneled to the Ballroom Project, *see* ECF 33 at 8-15, are "subject to the same congressional oversight" as "other appropriations," ECF 39 at 7; it is whether Congress has "express[ly] authori[zed]" the Ballroom Project, 40 U.S.C. § 8106, which Congress has not, *see* ECF 33 at 8-15; ECF 20 at 12-15; *see also* 54 U.S.C. § 100101(b)(2) (separately requiring that Congress "directly and specifically" authorize projects that impair historic objects in national parks). And while the National Trust's lack of a monetary stake in this action (and the fact that it pursues litigation in which the public has an interest) is pertinent to the question whether the Trust should be required to post a bond under Federal Rule of Civil Procedure 65 (which it should not, *see* ECF 2-1 at 40-42), it does not divest the Trust of Article III standing

where, as here, the National Trust and its members have been cognizably injured, *see* ECF 33 at 1-5.

*   *   *

If the Defendants' motion for a stay pending appeal is not stricken—and it should be, *see* ECF 41—the motion should be denied.

Respectfully submitted,

 */s/ Matthew F. Casassa*
Gregory B. Craig (164640)
FOLEY HOAG LLP
1717 K Street N.W.
Washington, DC 20006.
Tel: (202) 223-1200

Thaddeus A. Heuer (*pro hac vice*)
Matthew F. Casassa (*pro hac vice*)
Jack C. Smith (1725229)
FOLEY HOAG LLP
155 Seaport Boulevard
Suite 1600
Boston, MA 02210
Tel. (617) 832-1000

Dated: February 17, 2026

## **CERTIFICATE OF SERVICE**

  I certify that on February 17, 2026, the foregoing document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent via first class mail to those indicated as non-registered participants.

*/s/ Matthew F. Casassa*
