UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL TRUST FOR HISTORIC
PRESERVATION IN THE UNITED
STATES,
          Plaintiff,

     v.

NATIONAL PARK SERVICE, *et al.*,

          Defendants.

Case No. 1:25-cv-04316-RJL

## DEFENDANTS' RESPONSE TO MOTION FOR CLARIFICATION

The Trust has asked the Court to clarify that the "safety-and-security" exception to its preliminary injunction does not permit Defendants to "build the Ballroom." ECF 65 at 2. The Court should instead clarify that, under the safety-and-security exception, Defendants may proceed with construction of the East Wing project as scheduled because the entire project advances critical national-security objectives as an integrated whole. As Defendants have pressed from the start, as the record shows, and as a supplemental declaration attached to this response confirms, *see* Ex. A (Quinn Decl.), suspending construction would endanger the White House, the President, his family, and his staff.

*First*, the project includes national-security and military installations that cannot serve their functions without an appropriate structure to shield and protect them. *Second*, the structure itself includes important safety and security features that are integrated throughout the project. *Third*, a dormant excavation site adjacent to the exposed Executive Mansion itself poses serious safety and security threats. The Court is not positioned to second-guess these determinations about what is needed to ensure presidential security, let alone to superintend the construction process. The Court should therefore make clear that it does not intend to do either of those things.

1

1.      The Court's preliminary injunction order allows for continued work that is "strictly necessary to ensure the safety and security of the White House and its grounds, including the ballroom construction site, and provide for the personal safety of the President and his staff."  ECF 61 at 2.  The parties have disagreed over the scope of that exception, however.  The President has explained that, because the entire project fits within this "safety-and-security exception," the entire project should continue.  *See* March 31, 2026, President Trump Remarks, https://perma.cc/5384-KYCA; https://perma.cc/SYL9-L6EJ.  The Trust has taken a narrower view, contending that "exception does not permit the Defendants to build the Ballroom," and has filed a motion asking the Court to clarify as much.  ECF 65 at 2.

2.      The Court should clarify that the safety-and-security exception permits Defendants to proceed with the East Wing project, including the ballroom.  Continued construction is indeed necessary to ensure the safety and security of the White House and the President.  This is true for at least three independent reasons.

*First*, consistent with the classified declarations lodged with the Court, and as the President has now stated publicly, the project includes various national-security features, such as top-secret excavations, bunkers, bomb-shelters, protective partitioning, military installations, and hospital and medical facilities.  But it is not sufficient to say that those features alone may proceed, since they are integrated into the entire structure and cannot exist in isolation.  Quinn Decl. ¶ 7.  For example, a bunker or bomb shelter cannot serve its purpose without adequate above-ground cover.  *Id.* ¶¶ 6-7.  Indeed, the old East Wing's structure would have been unable to bear what it needed to hold to provide a secure space, and the underground changes would have been nearly impossible to build with a fragile structure on top, which is among the reasons why EXR determined to demolish it.  *Cf. id.* ¶ 9 (referencing the "known vulnerabilities in the prior East Wing").

*Second*, other national-security elements and improvements are built into the rest of the structure too, including the ballroom itself.  For example, the structure will use missile-resistant steel columns and beams, drone-proof roofing, and bullet- and blast-proof glass windows, among other things, all of which will advance safety and security interests as part of an inseparable whole. *Id.* ¶¶ 7-8.  Given the progress and status of the construction, it is essential to safety and security for the work to continue apace.  *Id.* ¶ 9.  The injunction's exception therefore should permit that work to proceed.

To be clear, all of this is consistent with Defendants' representations throughout the litigation.  As Defendants explained, the below-grade construction could accommodate "potential modifications" to the above-ground design, ECF 30-2 (Martin Decl.) ¶ 12, such as relocating windows, doors, and stairs, ECF 30-4 (Engineer Decl.) ¶¶ 9-11, to the extent that the National Capital Planning Commission or Commission of Fine Arts suggested minor design changes.  But that does not mean the below-ground construction was entirely distinct, or could serve its purposes without above-ground additions.  The overall above-ground ballroom is necessary to accommodate and effectuate the below-ground additions (including by providing adequate, reinforced cover). Quinn Decl. ¶ 7.  The security features of the ballroom itself mentioned above also carry design consequences and are also necessary to protect the safety of the President, his family, his staff, and his home.  *Id.* ¶ 10.

*Third*, even setting aside the national-security improvements associated with the project, leaving the site as it stands poses serious safety and security threats that can only be addressed by proceeding with construction as planned.  By virtue of the demolition work, the East Room of the Executive Mansion is currently exposed.  *See* Quinn Decl. ¶ 5.  That creates a vulnerability that must be mitigated by building a new structure adjacent to it.  *See id.* ¶¶ 5-6.  More generally, while

it is true that the project is expected to take another two years until completion, there is a major difference from a safety-and-security standpoint between a *dynamic* construction site and a *dormant* one. Allowing the site to remain dormant means that its vulnerabilities are exposed for longer, such that hostile actors can study them and identify points of attack. *Id.* ¶ 12. For this reason too, the safety-and-security exception to the injunction permits Defendants to proceed. A large hole in the ground adjacent to the White House presents an ongoing security risk to the President, and jeopardizes the mission of the Secret Service to protect the President. *See id.* ¶¶ 4-5, 9-10.

3.     The Trust's contrary interpretation of the safety-and-security exception is not only factually misguided, but also constitutionally improper and practically unworkable.

The Trust has suggested that Defendants should "request and receive written approval of this Court" before acting to protect the safety and security of the White House or the President. ECF 51-2 at 2. That offends the separation of powers, and the Court should clarify that it does not plan to superintend the construction in the guise of enforcing the safety-and-security exception. *See Salazar ex rel. Salazar v. District of Columbia*, 896 F.3d 489, 497 (D.C. Cir. 2018) (recognizing injunction as "[d]oubly" exceptional "when the judicial branch undertakes to … superintend [executive] operations"). Indeed, when it comes to national security, judicial second-guessing is particularly inappropriate. *See Ctr. for Nat. Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 926-27 (D.C. Cir. 2003).

More broadly, any requirement of judicial monitorship of which features are truly needed for the President's safety and security threatens to dragoon the Court into the role of construction manager. As the Trust's motion illustrates, what counts as "strictly necessary" for safety and security is subject to considerable debate and disagreement. It is untenable to force the President

to make important safety-and-security decisions under threat of contempt. *Cf. Tincher v. Noem*, 164 F.4th 1097, 1100 (8th Cir. 2026) ("A wrong call could end in contempt, yet there is little in the order that constrains the district court's power to impose it. . . . [T]o the extent the injunction's breadth and vagueness cause federal agents to hesitate in performing their lawful duties, it threatens to irreparably harm the government and undermine the public interest."); Quinn Decl. ¶ 12.

*   *   *

For these reasons, the Court should deny the Trust's motion for clarification and instead should clarify that the safety-and-security exception allows the project to proceed.

Dated: April 13, 2026

Respectfully submitted,

| | |
|---|---|
| BRETT A. SHUMATE<br>Assistant Attorney General<br>Civil Division | ADAM R.F. GUSTAFSON<br>Principal Deputy Assistant Attorney General<br>Environment and Natural Resources Division |
| YAAKOV M. ROTH<br>Principal Deputy Assistant Attorney General | PETER M. TORSTENSEN, JR.<br>Deputy Assistant Attorney General |
| ERIC J. HAMILTON<br>Deputy Assistant Attorney General | MARISSA A. PIROPATO<br>Deputy Chief |
| /s/ *Brantley T. Mayers*<br>BRANTLEY T. MAYERS<br>(FL Bar. No. 1039996)<br>Counsel<br>U.S. Department of Justice<br>Civil Division<br>950 Pennsylvania Avenue, N.W.<br>Washington, DC 20530<br>Brantley.T.Mayers@usdoj.gov<br>(202) 890-9874 | MICHELLE RAMUS<br>MARK WIDERSCHEIN<br>Trial Attorneys<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br>Natural Resources Section<br>950 Pennsylvania Avenue, N.W.<br>Washington, DC 20530<br>Michelle.Ramus@usdoj.gov<br>Mark.Widerschein@usdoj.gov<br>(202) 598-0414 |
| JOSEPH E. BORSON<br>Assistant Branch Director<br>EITAN R. SIRKOVICH<br>Trial Attorney<br>Civil Division, Federal Programs Branch | |

*Counsel for Defendants*