**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES**, *Plaintiff*, v. **NATIONAL PARK SERVICE**, *et al.*, *Defendants*. | Civil Action No. 25-4316 |

**REPLY IN SUPPORT OF**
**MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION**

In yet another brazen contortion of the laws of vocabulary, the Defendants ask the Court to "clarify" that its narrow exception—for "actions strictly necessary to ensure the safety and security of the White House and its grounds"—actually permits them to ignore this Court's injunction entirely and "proceed with the East Wing project, including the ballroom," ECF 69 at 2. This is not because the Court's injunction can be fairly read to permit any such thing; to the contrary, the injunction establishes an otherwise total prohibition on "the physical development of the proposed ballroom at the former site of the East Wing of the White House." ECF 61 at 2. It is because the Defendants believe they can ignore this Court's injunction and continue constructing a project they very much do not want to stop.  This Court should not abide such subterfuge.

**1.** Ever since the Court enjoined the Ballroom Project on March 31, the Defendants have sought to twist the Court's preliminary injunction to avoid complying with it. That same afternoon, President Trump insisted that the entire Ballroom *itself* was "necessary" to ensure "safety and security," and intimated that the Defendants had no intention of halting construction of the Ballroom once the injunction went into effect. *See* ECF 65 at 1-2; *see also* ECF 69 at 2. Concerned that the Defendants would willfully misconstrue this Court's injunction, the National Trust

promptly filed the pending motion for clarification, requesting that this Court confirm that its injunction—which, again, expressly prohibits "the physical development of the proposed ballroom," ECF 61 at 2—did not allow the Defendants to continue building that very same Ballroom, *see* ECF 65.

The National Trust's concerns were prescient: Three days later, the Defendants' self-styled "emergency" motion to the D.C. Circuit contended that the Ballroom itself was a supposed national-security necessity. *See* Emergency Mot. for Stay Pending Appeal, *Nat'l Tr. for Hist. Pres. v. Nat'l Park Serv.*, Nos. 26-5101, 26-5108, at 1-5, 24-26 (D.C. Cir. Apr. 3, 2026) ("Stay Mot.") (claiming that "security features and objectives" "dictate the entire project"). Their claims were challenging to follow, *see id.* at 1-5, contradicted their prior representations, *see* Order, *Nat'l Tr. for Hist. Pres. v. Nat'l Park Serv.*, Nos. 26-5101, 26-5108, at 3 (D.C. Cir. Apr. 9, 2026) ("Order"), and often had no apparent connection to national security at all, *see, e.g.*, Stay Mot. at 5 (claiming that the East Wing had "suffered from . . . mold" and "mildew"); Reply in Support of Emergency Motion for a Stay Pending Appeal, *Nat'l Tr. for Hist. Pres. v. Nat'l Park Serv.*, Nos. 26-5101, 26-5108, at 1 (D.C. Cir. Apr. 9, 2026) (arguing by adjective and claiming, without elaboration, that the East Wing had been "infested").

The Defendants' response to the National Trust's clarification motion offers more of the same. *See generally* ECF 69. Bunkers, apparently, are only as good as the 90,000-square-foot, 40-foot-ceiling ballrooms on top of them. *See* ECF 69 at 1 ("[T]he project includes national-security and military installations that cannot serve their functions without an appropriate structure to shield and protect them."). Security features like bulletproof glass are "integrated throughout the project," *id.*, as part of an "inseparable whole," *id.* at 2, such that the bunker's viability apparently now turns on the not-yet-existing Ballroom's not-yet-installed windows, *id.* And the construction site that the

2

Defendants planned to maintain for years suddenly must remain "*dynamic*," *id.* at 4—that is, work on the Ballroom must continue—or national security will be imperiled because "adversaries [may] view the elements of construction," ECF 69-1, ¶ 12. The Defendants appear unaware that the President prominently shared a photograph of himself standing on the construction site just last week, which has now been viewed at least 37,300 times. *See* Donald J. Trump, Truth Social, https://truthsocial.com/@realDonaldTrump/posts/116337483523761845 (Apr. 2, 2026).

The Defendants assert this is all "consistent with [their] representations throughout the litigation," *id.* Put charitably, that claim strains the boundaries of Fed. R. Civ. P. 11(b).

The Defendants repeatedly represented to this Court that below-ground work would *not* lock in the above-ground features of the Ballroom—a representation on which this Court explicitly relied when denying the National Trust's motion for a TRO, *see* ECF 17 at 3 (noting that "the Court takes seriously the Government's representations that its plans are not yet final"); *see, e.g.*, ECF 30 at 4; ECF 22 ¶ 4; ECF 15-1 at 9 ("[I]f Plaintiff challenges the prospective construction of the Ballroom, its suit is premature given that no plans have been finalized and above-grade work will not begin until April . . . ."); ECF 30 at 39 ("[T]he below-surface work is driven by national security concerns ***independent of the above-grade construction***" (emphasis supplied)). The Defendants now ask this Court to believe that their consistent and repeated prior representations were false. "The project is a single, coherent whole. . . . [The] below- and above-ground projects technically and structurally complement each other, ***and the below-ground construction has already been done with that expectation of what would go above***." ECF 69-1 ¶ 7 (emphasis supplied); *see also* Stay Mot. at 3.

That is not all. The Defendants successfully delayed a hearing on the National Trust's first preliminary-injunction motion by representing that "the Court will be able to resolve [the motion]

before above-grade construction begins," ECF 22 ¶ 4, while conveniently omitting that, in their view, no relief would then be possible. And the Defendants cannot explain how the bunker and the Ballroom have suddenly and implausibly become an "inseparable whole," ECF 69 at 3, or why that alchemy conveniently and self-servingly occurred only *after* the Court issued its preliminary injunction.

This conduct not only reflects a disturbing lack of candor to the tribunal. *See Nat'l Treasury Emps. Union v. Vought*, 774 F. Supp. 3d 1, 57 (D.D.C. 2025). It also exemplifies a broader and disturbing pattern of disregarding the law, misrepresenting the facts, and trying this Court's patience. There would never have been a "large hole in the ground adjacent to the White House," ECF 69 at 4, if the Defendants had not publicly misrepresented the nature of the Ballroom Project, *see* Order at 1; ECF 2-14, and unlawfully concealed the August 28, 2025 documents showing they were going to demolish the East Wing, *see* ECF 14-2; ECF 14-3; ECF 15-1 at 11; 42 U.S.C. § 4336(b)(2) (requiring that the EA be a "concise *public* document" (emphasis added)). The National Trust (and likely others) would have sued, and both the October 20, 2025 East Wing demolition and the ensuing Ballroom Project would have been stopped and reviewed before they began.

Nor would there have been hundreds of millions of dollars committed to or expended on construction material for the Ballroom (Stay Mot. at 1, 3-4) if the Defendants had said in December (as they declare now, ECF 69-1 ¶ 7) that the ongoing below-ground aspects of the Project were inseparable from the above-ground aspects. *See* Dec. 16, 2025 Hr'g Tr. 21:9-20. Or if the Defendants had admitted in January that NPS remained involved through its supposed Organic Act authority. *See* ECF 30 at 17 n.7 (NPS was "indisputably not directing" the Ballroom Project meaning the Trust's "APA claims . . . go nowhere"). Rather, the Court would have likely halted

the project at one or both junctures for a variety of reasons, including violations of 40 U.S.C. § 8106, the APA, NEPA, and the Redwood Amendment. Instead, having managed to unlawfully complete substantial portions of the Ballroom Project, the Defendants insist that they cannot be prevented from unlawfully completing the rest.

There is no reason to let them. The National Trust takes national security and the safety of the President seriously, as it has reiterated many times. *See, e.g.*, ECF 54 at 23-24; ECF 41 at 2; ECF 33 at 25; Jan. 22, 2026 Hr'g Tr. 21:7-14; Mar. 17, 2026 Hr'g Tr. 12:10-23. But as the Defendants' response, their other public filings, and President Trump's public statements make clear, neither the Court's injunction (nor the National Trust's proposed modifications to it, *see infra* pp. 7-8) put national security or the President's safety at risk during the pendency of an appeal of this Court's preliminary-injunction order.

No matter how much the Defendants insist otherwise, the lack of a massive ballroom on the White House grounds is not a national-security emergency. Its absence has not prevented any past president from residing in the White House during his tenure over the past two centuries, or from using the prior East Wing bunker for approximately eighty years. The Defendants declare that the bunker needs "adequate above-ground cover," ECF 69 at 2, but never explain why only the President's preferred 70-foot-tall ballroom[1]—and not a simple at-grade slab—would suffice. Notably, rather than provide the Court with new factual evidence, they resort to the conclusory claim that the project is a "coherent whole," ECF 69-1 ¶ 7, and re-reference the previous "classified declarations lodged with the Court" that this Court has already reviewed, ECF 69 at 2.

---

[1] East Wing Modernization, Commission of Fine Arts (Feb. 13, 2026), at A24, https://www.cfa.gov/system/files/meeting-materials/CFA-19FEB26-1-NPS-WH-Ballroom_pres-sm%5B2-14%5D.pdf (last visited Apr. 14, 2026).

Nor do the Defendants explain why the *Ballroom's* security features—like "bullet- and blast-proof glass windows," ECF 69 at 2—are necessary for the *bunker*. Instead, the Defendants' motion simply cites a new declaration that repeats the same formulaic, fact-free claims. *See id.* (citing ECF 69-1 ¶¶ 7-9). Yet a ballroom is plainly not a bunker, and merely possessing security features does not transform a ballroom into a national-security imperative. And the Defendants do not explain why they will be irreparably harmed *pending appeal* by the absence of fixtures that, even under their own plans*,* may not be installed until years from now. See *id.* at 3 (discussing "drone-proof roofing"); *see* Order at 3-4 (noting that Defendants' own plans state the project will not be complete until 2028).

Finally, and demonstrably, the Defendants' self-described (and self-inflicted) "large hole in the ground," ECF 69 at 4, has not prevented President Trump from continuing to live at the White House since he demolished the East Wing; from hosting guests, press conferences, and foreign dignitaries; or from convening meetings of Cabinet members and other high-ranking officials. The Defendants assert that this presents "an ongoing security risk." *Id.* Yet the asserted risks described in the Defendants' newest declaration have been present for at least the last six months, and seem likely to persist for several years if the Project were allowed to continue. *See* ECF 69-1. Notably, many are risks about which the Defendants' *own conduct* has affirmatively demonstrated they have no real concern—for example, if "ongoing vulnerabilities from entertaining foreign leaders and others in soft tents" truly "demand[ed] resolution without delay," ECF 69-1 ¶ 9, this President and his predecessors would have stopped the practice years ago.

**2.** What the Defendants' response *does* make clear, however, is that unless the Court completely prohibits above-ground development of the Ballroom, the Defendants will identify another self-serving interpretation of whatever injunction the Court may enter, and keep building

anyway. Unfortunately, for these Defendants, only unambiguous, bright-line rules will work. The National Trust therefore proposes that the Court clarify its injunction as follows.

First, the Court should *prohibit any above-ground development* of the proposed Ballroom, the proposed east colonnade, and any other structure amounting to, connected to, or otherwise incorporated with the proposed Ballroom, the proposed east colonnade, or any above-ground portion or component thereof.

Second, the Court should permit the Defendants to continue *below-ground work* on the bunker. In addition, for the sole and exclusive purposes of ensuring the administrability of the injunction, and without waiver of its prior objections, the National Trust does not object to any other below-ground work at the East Wing site, provided such work is undertaken at the risk of court-ordered removal upon the resolution of the merits of this case, *see, e.g.*, ECF 17 at 3.

Third, the Court should also permit the Defendants to take actions necessary to maintain the present state of the East Wing site (like winding down any ongoing work prohibited by the preliminary injunction and securing and storing construction materials), or actions necessary to maintain the security of the White House and its grounds in the same manner the Defendants have been doing for nearly six months without apparent issue. The National Trust has no objection to the Secret Service ameliorating the alleged security risks it identified to its personnel by covering "uncovered rebar and exposed cables," ECF 69-1 ¶ 4, removing "construction debris," and filling "large holes," *id.* ¶ 5. However, the National Trust requests that the Court specify that any such actions *exclude above-ground development of the Ballroom*.

Because the Defendants have advanced much of their national-security argument through "secret evidence"—classified declarations submitted for *ex parte*, *in camera* review—the National Trust is necessarily limited in responding to the Defendants' audacious claims, *TikTok Inc. v.*

*Garland*, 604 U.S. 56, 82 (2025) (Gorsuch, J., concurring). Although the unsealed evidence and the Defendants' own actions strongly suggest that there is no genuine national-security need for any part of a massive ballroom, the National Trust appreciates that the Court is in the best position to evaluate the entirety of the evidence. If the Court determines that additional actions are necessary to ameliorate safety or national-security risks, the Court should set them forth with specificity and particularity, in light of the Defendants' efforts to self-servingly "interpret" the safety-and-security exception to the Court's injunction.

Finally, because *any* construction on the Ballroom—whether necessary for national security or not—violates federal law and usurps Congress's constitutional authority, this Court should order that any necessary security measures be undertaken in the *most minimal* and *most reversible* manner possible, preserving the congressional powers that the Defendants continue to wrongfully arrogate to themselves.[2]

### CONCLUSION

The National Trust respectfully requests that the Court (i) clarify its preliminary injunction as proposed by the National Trust; (ii) reject the Defendants' arguments that the injunction, so clarified, risks national security or the President's safety; and, (iii) in order to aid appellate review, set out those conclusions and any supporting factual findings as fully and expeditiously as the Court is able.

---

[2] For example, if the Court determines that the bunker requires an at-grade cover, it should affirmatively order that the Defendants solve this self-created problem by installing a simple slab—not the massive Ballroom that the Defendants want.

8

Dated: April 14, 2026

Respectfully submitted,

NATIONAL TRUST FOR HISTORIC
PRESERVATION IN THE UNITED STATES

By its attorneys,

 */s/ Matthew F. Casassa*
Gregory B. Craig (164640)
FOLEY HOAG LLP
1717 K Street N.W.
Washington, DC 20006
Tel: (202) 223-1200

Thaddeus A. Heuer (*pro hac vice*)
Matthew F. Casassa (*pro hac vice*)
Jack C. Smith (1725229)
FOLEY HOAG LLP
155 Seaport Boulevard
Suite 1600
Boston, MA 02210
Tel: (617) 832-1000

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 14, 2026, the foregoing document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent via first class mail to those indicated as non-registered participants.

*/s/ Matthew F. Casassa*