## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>NATIONAL PARK SERVICE, *et al.*,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　Civil Case No. 25-4316 (RJL)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION
April 16th, 2026 [Dkt. #65, 71]

On March 31, 2026, I granted the motion of the National Trust for Historic Preservation in the United States ("National Trust") for a preliminary injunction to halt construction of a ballroom on White House grounds as *ultra vires*. In recognition of the national security and presidential security concerns raised by the ongoing construction project, I excluded from the scope of the injunction "actions strictly necessary to ensure the safety and security of the White House and its grounds, including the ballroom construction site, and provide for the personal safety of the President and his staff." Defendants now seek to turn this exception on its head and unreasonably insist that the entire ballroom project may proceed. Based on the record before me, I cannot possibly agree, but I will clarify the scope of the injunction as described below.

1

### BACKGROUND

On March 31, 2026, I granted the National Trust's motion for a preliminary injunction. *See* Mem. Op. [Dkt. #60]; Prelim. Inj. Order [Dkt. #61]. The Order preliminarily enjoined Defendants (excluding the President) from "taking any action in furtherance of the physical development of the proposed ballroom at the former site of the East Wing of the White House, including but not limited to any further demolition, site preparation work, landscape alteration, excavation, foundation work, or other construction or related work[.]" Prelim. Inj. Order at 2. My Order excluded from the scope of the injunction "actions strictly necessary to ensure the safety and security of the White House and its grounds, including the ballroom construction site, and provide for the personal safety of the President and his staff" (the "safety-and-security exception"). *Id.*

On April 1, the National Trust, citing public statements by the President interpreting my Order, filed a motion for clarification of the preliminary injunction ("Motion to Clarify"). *See* Mot. for Clarification [Dkt. #65]. Defendants meanwhile, not surprisingly, filed an appeal and an emergency motion to stay. *See* Emergency Mot. for Stay Pending Appeal, *Nat'l Tr. for Hist. Pres. v. NPS*, No. 26-5101 (D.C. Cir. Apr. 3, 2026) [Dkt. #2167119]. On April 11, our Circuit Court remanded the case "with instructions to promptly address the pending motion to clarify how the injunction and its exception ensure safety and security pending litigation" and extended my temporary stay of the preliminary injunction to April 17, 2026. Order, *Nat'l Tr. for Hist. Pres. v. NPS*, No. 26-5101 (D.C. Cir. Apr. 11, 2026) ("Per Curiam Order") [Dkt. #2168165]. On April 13, Defendants filed their opposition ("Defs.' Opp'n") [Dkt. #69] to the National Trust's motion to clarify and

2

attached a Secret Service declaration.  *See* Decl. of U.S. Secret Service Deputy Director Matthew C. Quinn ("Third Quinn Decl.") [Dkt. #69-1].  On April 14, the National Trust filed a reply in support of its motion.  Reply in Supp. of Mot. for Clarification ("Reply") [Dkt. #70].  That same day, Defendants filed a motion seeking a further 14-day stay of the preliminary injunction.  Mot. to Extend Administrative Stay of Prelim. Inj. [Dkt. #71].  The motions are now ripe for decision.

## DISCUSSION

Defendants argue that the entire ballroom construction project, from tip to tail, falls within the safety-and-security exception and therefore may proceed unabated.  That is neither a reasonable nor a correct reading of my Order!  My Order preliminarily enjoined Defendants (excluding the President) from "taking any action in furtherance of the physical development of the proposed ballroom."  Prelim. Inj. Order at 2.  The accompanying opinion stated that "the ballroom construction project must *stop* until Congress authorizes its completion."  Mem. Op. at 1 (emphasis added).  It is, to say the least, incredible, if not disingenuous, that Defendants now argue that my Order does *not* stop ballroom construction because of the safety-and-security exception!

For the reasons that follow, I will further clarify and amend my Order to stop only above-ground construction of the planned ballroom.  My Amended Order does not, however, stop below-ground construction of national security facilities, work necessary to provide for presidential security, and construction necessary to protect and secure the White House and the construction site itself.

*First,* limiting the scope of the injunction to above-ground construction directly

addresses the National Trust's irreparable harm, which stems from the above-ground, visible construction of the ballroom. *See* Mem. Op. at 29–32; *see also* Pl.'s Mem. in Supp. of Prelim. Inj. [Dkt. #51-1] at 24–25 ("[T]he National Trust has never requested . . . that the Court enjoin construction of a *bunker*. The National Trust is simply requesting that the Court enjoin construction of the *Ballroom*."). My Order barring above-ground construction provides "complete relief" to the National Trust, while minimizing the "burden[]" to Defendants through the safety-and-security exception. *See Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

*Second*, the injunction excludes only below-ground construction because, throughout this case, Defendants raised discrete national security concerns about construction of *underground* elements. Early on, Defendants argued that "security concerns . . . warrant[ed] permitting the current below-grade construction to continue." Defs.' TRO Opp'n [Dkt. #15-1] at 27; *see also* TRO Hr'g Tr. [Dkt. #18] at 20:22-24 ("[T]he below-ground work that's occurring now has nothing to do with Plaintiff's asserted aesthetic injury, and that work must continue for national security reasons."). Specifically, Defendants indicated that national security-related facilities are being constructed below ground. *See, e.g.*, Defs.' Suppl. Br. [Dkt. #30] at 41 (referencing a "security bunker" and stating that "an injunction halting construction would endanger national security").

The exception for underground national security facilities does not include the proposed ballroom because Defendants themselves distinguished between below-ground and above-ground construction, stating that "the below-surface work is driven by national security concerns *independent of* the above-grade construction." Defs.' Suppl. Br. at 39

4

(emphasis added); *see also* Decl. of Professional Engineer [Dkt. #30-4] at ¶ 5 (referencing the "national security concerns with aspects of the below grade structure"). Defendants also repeatedly represented that the project's below-ground elements do not "lock in" the design of the above-ground ballroom. Defs.' Suppl. Br. at 4; *see also* Defs.' Mot. to Modify Schedule [Dkt. #22] ¶ 4; Defs.' Mot. to Stay [Dkt. #39] at 2; *cf.* Decl. of John Stanwich ("Stanwich Decl.") [Dkt. #14-6] ¶ 21 (noting the below-ground elements could be "constructed as planned while the above grade design is finalized").

Defendants now brazenly assert that below-ground construction has "been done with th[e] expectation of what would go above," and that the "project is a single, coherent whole." Third Quinn Decl. ¶ 7. Defendants argue that security-related elements of the ballroom, such as "missile-resistant steel columns and beams, drone-proof roofing, and bullet- and blast-proof glass windows" will "advance safety and security interests as part of an inseparable whole." Defs.' Opp'n at 3. Defendants further argue that "leaving the site as it stands poses serious safety and security threats that can only be addressed by proceeding with construction as planned." *Id.* In my view, these arguments fail to justify Defendants' extraordinary, if not disingenuous, reading of my preliminary injunction Order.

Indeed, Defendants' latest representations that "the entire project advances critical national-security objectives as an integrated whole," *see* Defs.' Opp'n at 1, are in direct conflict with Defendants' prior representations that the above-ground and below-ground portions of the project were "independent of" one another, *see* Defs.' Suppl. Br. at 39. Defendants now insist that the "overall above-ground ballroom is necessary to

5

accommodate and effectuate the below-ground additions (including by providing adequate, reinforced cover)." Defs.' Opp'n at 3. But Defendants do not explain why the proposed 90,000-square-foot ballroom—the source of the National Trust's claimed injury and likely unauthorized by statute—is required for security purposes *now*. Instead, the supporting declaration states merely that an "above-ground slab and topping structure is [sic] needed" to protect the underground elements. Third Quinn Decl. ¶ 7; *see also id.* ¶ 6 ("[L]eaving nothing on top of the below-ground construction is not an option."). As I clarify below, Defendants may, consistent with the injunction, cover and secure the below-ground construction while litigation proceeds. Further, while Defendants predicted in December that above-ground construction would begin, at the earliest, this month, *see* Stanwich Decl. ¶ 20, Defendants, to date, have not provided any updates on whether the below-ground facilities are ready for a "topping structure."

The fact that the ballroom is planned to include security features such as bullet-proof windows and a drone-proof roof does not bring the structure within the scope of the exception. While these features may well be beneficial, Defendants have not provided any national security justification for why these features must be installed *immediately* such that they should be excluded from the scope of the injunction. Nor does it appear Defendants could install these features immediately even if they wanted to. As noted by our Circuit Court, the ballroom's planned security features are still months, if not years, away from being realized—belying Defendants' argument that an inability to implement those features *now* imposes irreparable harm. Per Curiam Order at 3; Defs.' Opp'n at 4 (acknowledging that "the project is expected to take another two years until completion").

6

Defendants' insistence that leaving the site "dormant" poses additional security risks also fails. As an initial matter, my Amended Order permits below-ground construction, measures for presidential security, and measures to secure the grounds. Further, I previously rejected Defendants' argument that "any construction delay will undermine national security," Mem. Op. at 33, because—and here is the bottom line—Defendants themselves forged ahead and created this "coordinated and managed safety hazard" on White House grounds, *id.* (quoting Decl. of U.S. Secret Service Deputy Director Matthew C. Quinn ("Second Quinn Decl.") [Dkt. #30-5] ¶ 8).

Defendants' four classified *ex parte* declarations, all of which I reviewed and have taken into consideration, *see* Mem. Op. at 33 n.20, shed no further light on the question of whether the above-ground ballroom is necessary for national security. Without more, I cannot find that above-ground construction of the proposed ballroom *must* proceed.[1]

Apart from the below-ground national security facilities, Defendants have identified two additional categories of construction "necessary" for presidential security and the safety of the White House grounds. Second Quinn Decl. ¶ 6. Defendants indicated that the Secret Service is "coordinat[ing] with the [ballroom] contractor on . . . temporary measures to ensure the security and safety of the President, the First Family, and the White House complex." Decl. of U.S. Secret Service Deputy Director Matthew C. Quinn ("First

---

[1] To be sure, Defendants have, at times, represented that it would be "unworkable to distinguish between construction elements that are national-security related and those that are not." Defs.' Mot. to Stay [Dkt. #39] at 2; Defs.' Opp'n to Renewed Mot. for Prelim. Inj. at 36. Arguments about workability are distinct from asserting that the entire ballroom is a national security imperative. In any event, my Amended Order permitting below-ground construction mitigates at least some workability concerns.

Quinn Decl.") [Dkt. #14-11] ¶ 7.  According to the Secret Service, "[t]hese outstanding security projects are expected to require additional weeks or months to complete."  Second Quinn Decl. ¶¶ 5–6.

Defendants have also indicated a need to preserve and protect the structural integrity of the White House and to protect the construction site itself from deterioration due to the elements.  *See* Second Quinn Decl. ¶ 6 (noting that "continued waterproofing and water management is necessary to maintain the integrity of security elements throughout the Complex as flooding poses risks to infrastructure, utilities, and other critical systems"); Defs.' Suppl. Br. at 40 (explaining that "below-ground work on waterproofing, security improvements, and utility infrastructure will have to take place at some point regardless of what is erected above-ground"); Defs.' Opp'n to Renewed Mot. for Prelim. Inj. [Dkt. #52] at 34 (halting all construction "would expose the Executive Mansion to damage").  Both categories of construction activities may proceed.

*     *     *

In light of the National Trust's motion and the parties' arguments, and in consideration of Defendants' concerns about national security and presidential security, I will hereby clarify and amend my preliminary injunction Order to specify that *below-ground construction* may proceed, including the construction of any "top-secret excavations, bunkers, bomb-shelters, protective partitioning, military installations, and hospital and medical facilities," as well as such above-ground construction strictly

8

necessary to cover, secure, and protect such facilities. Defs.' Opp'n at 2. The Amended Order permits "temporary measures," First Quinn Decl. ¶ 7, which have already been in place, to provide for the personal security of the President. The Amended Order also permits construction necessary to protect the project site and to protect the structural integrity of the White House complex, including waterproofing, water management, and resolving construction risks such as "uncovered rebar and exposed cables around the site." Third Quinn Decl. ¶ 4. However, the injunction does *not* permit above-ground construction of the proposed ballroom.

The Court has taken Defendants' invocation of national security and presidential security seriously throughout this case, which is why I included a safety-and-security exception in my original Order. But national security is not a blank check to proceed with otherwise unlawful activity, and belated assertions that the above-ground ballroom is "inseparable" from an array of security features, *see* Defs.' Opp'n at 3, are not an occasion for this Court to reweigh the equities or reconsider the preliminary injunction! In my view, the safety-and-security exception, as clarified, permits measures critical to national and presidential security to move forward pending final resolution of this case and any appeal.[2]

---

[2] Defendants insist that their arguments about national security cannot be subject to "judicial second-guessing." Defs.' Opp'n at 4. Indeed, precedent "counsel[s] deference in national security matters." *Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 927 (D.C. Cir. 2003). But judicial deference is not the same as withholding judicial review altogether. *See id.* at 928 (applying deference "so long as the government's declarations raise *legitimate* concerns [about] national security" (emphasis added)); *see also United States v. Zubaydah*, 595 U.S. 195, 205 (2022) (in context of military secrets privilege, a "court must decide for itself whether the occasion is appropriate for claiming the privilege"); *TikTok Inc. v. Garland*, 604 U.S. 56, 82 (2025) (Gorsuch, J., concurring in the judgment) (noting that the Supreme Court "decline[d] to consider the classified evidence the government has submitted to us"). Indeed, two of my colleagues recently granted preliminary injunctions notwithstanding the Government's invocation of national security concerns and reliance on classified declarations. *See* Hr'g Tr. at 43:11–14, 44:4–10, *Rhode Island v. U.S.*

9

I will close by noting that I have no desire or intention to be dragooned into the role of construction manager. Contrary to Defendants' suggestion, I have never required Defendants to "request and receive written approval" before proceeding with construction. Defs.' Opp'n at 4. The purpose of this opinion is merely to clarify that the injunction does, in fact, stop construction of the above-ground ballroom. I trust that Defendants will be able to implement my Amended Order in good faith and with the benefit of this clarification once my Amended Order goes into effect. In recognition of Defendants' concerns and for the reasons stated in my opinion, *see* Mem. Op. at 34, I will extend the temporary stay by seven (7) days after the issuance of this opinion and Amended Order.[3]

For the foregoing reasons, it is hereby **ORDERED** that the National Trust's Motion to Clarify [Dkt. #65] is **GRANTED**, and Defendants' Motion to Extend Administrative Stay of Preliminary Injunction [Dkt. #71] is **GRANTED** in part and **DENIED** in part. An Amended Order will issue contemporaneously with this opinion.

RICHARD J. LEON
United States District Judge

---

*Dep't of Interior*, No. 25-cv-4328 (D.D.C. filed Jan. 12, 2026) [Dkt. #55] (noting government's "failure to explain or apply . . . [the] stated national security reason"); Min. Order, *Empire Leaseholder LLC v. Burgum*, No. 26-cv-4 (D.D.C. filed Jan. 15, 2026).

[3] The Court gives fair notice to Defendants, however, that any above-ground construction over the next seven days that is not in compliance with my Amended Order is at risk of being taken down pending the resolution of this case.