UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL TRUST FOR HISTORIC
PRESERVATION,
          Plaintiff,

v.

NATIONAL PARK SERVICE, *et al.*,

          Defendants.

Case No. 1:25-cv-04316-RJL

**DEFENDANTS' RULE 62.1 MOTION
FOR AN INDICATIVE RULING DISSOLVING THE COURT'S INJUNCTION**

"The National Trust for Historic Preservation" is a beautiful name, but even their name is FAKE because when they add the words "in the United States" to the National Trust for Historic Preservation, it makes it sound like a Governmental Agency, which it is not.  In fact, the United States refused to continue funding it in 2005 because they strongly disagreed with their mission and objectives.  They are very bad for our Country.  They stop many projects that are worthy, and hurt many others.  In this case, they are trying to stop one that is vital to our National Security, and the Safety of all Presidents of the United States, both current and future, their families, staff, and Cabinet members.  They were asked by the United States Military not to bring this suit because of the Top Secret nature of the important facility being built.  They were shown detailed plans and specifications of this knitted, unified, and cohesive structure by Top Officers and Leaders in both the Military and Secret Service.  But this did not deter them because they suffer from Trump Derangement Syndrome, commonly referred to as TDS, as noted by Democrat Senator John Fetterman, of Pennsylvania, and are represented by the lawyer for Barack Hussein Obama, Gregory Craig.  The lower section of the building does not work without the upper section and, likewise, the upper section of the building does not work without the lower.  It is all one highly

1

integrated unit!  As an example, one venting system, one electrical system, one plumbing system, one security system, one air conditioning and heating system, one elevator connector and, very importantly, one structural steel and enforced concrete system — and more.  Even the bullet proof windows and glass, and the heavy steel, drone proof roof, protect what is below. With such a facility, it would have been impossible for an attack like that which took place last Saturday evening in D.C. when an attempted assassin, armed with a shotgun, pistol, and knives, charged through a security checkpoint at the Washington Hilton in an attempt to assassinate President Donald J. Trump, First Lady Melania Trump, and members of the President's Cabinet and senior staff, during the White House Correspondents' Dinner.  The Secret Service fortunately neutralized the assassin before he could reach the ballroom.  However, Saturday's narrow miss—which marks the third assassination attempt on President Trump since 2024—confirms what should have already been obvious:  Presidents need a secure space for large events, that currently does not exist in Washington, D.C., and this Court's injunction stalling this Project cannot defensibly continue, for the sake of the safety of President Trump, future Presidents, and their families, Cabinets, and staff.  Defendants thus request that this Court issue an indicative ruling under Rule 62.1 that it will dissolve its injunction.   Three assassination attempts—including the attempt in Butler, Pennsylvania, where an assassin's bullet hit the President's ear—is enough.  There is absolutely no argument that a woman walking her dog in the vicinity of the White House has STANDING to stop such a desperately needed structure for the people of the United States of America, as it will provide Presidents, current and future, a secure space to do their jobs.

The day after this assassination attempt, Defendants asked the Trust whether they oppose this motion and still seek to stop this Project by continuing their dangerous lawsuit.  The "Trust" refused to heed their request, and responded that it opposes this motion.

1.      Defendants have appealed this Court's preliminary injunction regarding the Project. ECF 74.  That appeal divests this Court of jurisdiction over its injunction.  *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023).  Even so, Federal Rule of Civil Procedure 62.1 provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may … state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  Fed. R. Civ. P. 62.1(a)(3).  An indicative ruling is especially appropriate where it would "obviat[e] the need for the appeal." *Amarin Pharms. Ir. Ltd. v. FDA*, 139 F. Supp. 3d 437, 447 (D.D.C. 2015).  To that end, where, as here, a change in circumstances warrants dissolving the underlying injunction on appeal, that is a paradigmatic example of when a district court should issue such a ruling.  *See, e.g.*, *Index Newspapers LLC v. City of Portland*, 2022 WL 72124, at *1 (D. Ore. 2022).

2.      Earlier this week, an assassin traveled by train across the Country with multiple firearms and knives planning to kill the President, the First Lady, and senior ranking officials within the Administration.  *See* Steven Nelson and Chris Nesi, *Read White House Correspondents' Dinner suspect Cole Allen's full anti-Trump manifesto,* NEW YORK POST (Apr. 26, 2026), https://nypost.com/2026/04/26/us-news/read-whcd-gunman-cole-allens-full-anti-trump-manifesto.  The timing was not coincidental: as stated in his "sprawling manifesto," the assassin identified the White House Correspondents' Dinner as his "first real opportunity" to target the President.  *Id*.  That is so, because the assassin understood what Defendants have been saying for months: The President lacks a secure space for large events.  The Washington Hilton is no exception.  Indeed, the assassin himself seems to have bragged that he was able to check into the hotel as a guest, and "walk in with multiple weapons" without anyone dealing with him as a "threat."  *Id*.  Further, he believed that come Saturday, he would be able to exploit the venue's

security defects, and make his way up to the President—willing to "go through most everyone [there] to get to" him. *Id.*

The assassin came horrifically close, as U.S. Secret Service Deputy Director Quinn's declaration ("Quinn Decl.," attached) explains. During the event, the assassin was able to run through a security checkpoint and open fire on a Secret Service agent, before he was apprehended. Quinn Decl. ¶¶ 6-7. While the Secret Service was able to be as effective as realistically possible that night, "as demonstrated by the prompt apprehension" of the assassin, they were nonetheless limited by the "inherent constraints" that come with available "off-site venues" that are outside the White House Complex, such as a hotel with more than a thousand rooms like the Washington Hilton. *Id.* ¶¶ 8-10. By contrast, having events at the White House Complex will allow for major improvements in safety, and significantly increase the ability of the Secret Service to protect the President and guests from threats. *Id.* ¶¶ 11-14.

As the undisputed evidence demonstrates, the Project is required for National Security. It will shield the now-exposed East Room of the Executive Mansion and provide best in class, modern security to the President and his family, his Cabinet, his staff, and visitors. This "fixed structure"—constructed using "threat-resistant materials" including missile resistant steel columns, Military-grade venting, drone-proof ceilings, and bullet, ballistic, and blast proof glass—will form "a fortified structural buffer" protecting "both the main White House and West Wing." Third Quinn Decl. ¶ 10. Together, the ballroom and secure facilities throughout the Project—bomb shelters, a state of the art hospital and medical facilities, Top Secret military installations, structures, and equipment, protective partitioning, and other features—are a single integrated, complex unit that is vital for the National Security of the United States. *Id.* This Project will ensure that events like the horrific attack on Saturday night do not happen again. *See* Quinn Decl.

¶¶ 15-16, 20-21.

3.      The attack confirms that this Court's injunction is intolerable and unsustainable as a matter of equity and Law.  In addition to the multiple classified declarations to the contrary, the attack on Saturday night is proof positive that this wrongful injunction should be dissolved. In its most recent opinion, the Court stated that there is no "national security justification" for why a secure ballroom must be constructed "immediately."  ECF 72, at 6 (emphasis removed).  Those assertions were wrong then, and they are indefensible now. The fact that an assassin came mere seconds from shooting the President—along with his family, the bulk of his Cabinet, his senior staff, and the Washington press corps—lays bare that D.C. does not have a secure space for large high-profile events, or one able to "accommodate an event with the line of succession for the U.S. government."[1]  What he did on Saturday night could not have taken place in this new and highly secure facility!

After the attack, a bipartisan chorus of legislators, analysts, and media pundits have vocally expressed support for completion of the ballroom project.  *See, e.g.*, n.1.  This group includes Democrat Senator John Fetterman, and Senator Rand Paul. In addition, in the long and storied history of the White House dating back to 1791, Congress has never dictated or tampered with the zoning, permitting, or architectural aspects of any Project, especially one being given FREE OF CHARGE AS A GIFT TO THE COUNTRY!  Without such a location, the President is thus put

---

[1] Senator John Fetterman (@SenFettermanPA) ("[D]rop the TDS and build the White House ballroom."), X, (Apr. 26, 2026, 9:13 AM), https://perma.cc/FLL3-F6KT; Senator Tim Sheehy (@TimSheehyMT) ("A President of any party should be able to host events in a secure area without attendees worrying about their safety."), X (Apr. 26, 2026, 3:33 PM, https://perma.cc/5YUE-9HES; Senator Lindsey Graham (@LindseyGrahamSC) ("[The ballroom] will provide adequate security for this president and future presidents for events like the White House Correspondents Diner."), X (Apr. 26, 2026, 1:04 PM) https://perma.cc/L3NX-LXBS; Representative Randy Fine (@RepFine) ("[T]he lawsuits attempting to stop [the ballroom] …are nonsense."), X (Apr. 26, 2026, 2:34 PM) https://perma.cc/8SM9-UE44.

to the choice of risking his safety by attending events in unsecure venues—be it the tents on the White House lawn, or places like the Washington Hilton (which is now home to two attempted presidential assassinations)—or forgoing those events entirely—to the detriment of his constitutional responsibility to "speak[] to and on behalf of the American people," *Trump v. United States*, 603 U.S. 593, 617-618 (2023).

Forcing a President to make such a choice is intolerable, all the more so when one accounts for the supposed "harms" on the other side of the ledger. Once more, the Trust is suing on behalf of a *single person* who walks her dog in the *vicinity* of the White House, *once a month*, and *expects* to dislike this Project without ever having seen it. ECF 2-3, at 5. A more lopsided balance is inconceivable. *See National Trust for Historic Preservation in the United States v. NPS*, 2026 WL 980554, at *8 (D.C. Cir. 2026) (Rao, J., dissenting). The "current safety of the President, as well as his family and staff, plainly outweighs future [visual preference] harms to the Trust." *Id.* That should have doomed this injunction months ago, under on-point Supreme Court precedent. *Winter v. NRDC*, 555 U.S. 7, 23-24, 33 (2008) (holding injunction unjustified because national-security interests "plainly outweighed" the "plaintiffs' ecological, scientific, and recreational interests in marine mammals"). But the balance of the equities is inescapable now: The passing visual gripes of a wandering pedestrian cannot possibly justify delaying the construction of a secure facility for the President to do his job.

On that score, this weekend makes clear why this Court's injunction must be dissolved "immediately." ECF 72, at 6. In its prior opinion, this Court stated that the Defendants would likely not suffer short-term irreparable harm, because a complete ballroom is still "months" or "years" away from being finished. *Id.* However, that misses the entire point. As Defendants have detailed, and as this weekend painfully confirms, all current and future Presidents need a secure

large-event space *now*. Even if that space cannot be conjured with a finger snap, the injunction "inevitably extends the time during which" the ballroom remains unavailable, and "the President's residence remains less secure." *National Trust*, 2026 WL 980554, at *7 (Rao, J., dissenting). "Every additional day of White House vulnerability harms the government." *Id.* That is so, because every additional day of court-manufactured delay is yet another day that the lives of the President, his family, his Cabinet, and his staff, and those of future Presidents, are being subject to avoidable hazard. If any other President had the ability, foresight, or talents necessary, to build this ballroom, which will be one of the greatest, safest, and most secure structures of its kind anywhere in the World, there would never have been a lawsuit. But, because it is DONALD J. TRUMP, a highly successful real estate developer, who has abilities that others don't, especially those who assume the Office of President, this frivolous and meritless lawsuit was filed. Again, it's called TRUMP DERANGEMENT SYNDROME. On top of everything else, this project is a gift to our Country from President Trump, and other Donors. It is free of charge to the American Taxpayer. Who could ever object to that?

This Court should never have enjoined this Project, but now, after the Saturday night attempted assassination, which could have never taken place in the new facility, reasonable minds can no longer differ — The injunction must be dissolved. This Court should immediately issue an indicative ruling that it will dissolve the injunction, and put an end to this frivolous lawsuit, which greatly endangers the lives of all Presidents, current and future.

Dated: April 27, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

R. TRENT MCCOTTER
Principal Associate Deputy Attorney General

/s/ Stanley E. Woodward, Jr.
STANLEY E. WOODWARD, JR.
Associate Attorney General

U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
stanley.woodward@usdoj.gov
(202) 514-2000

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on this date I filed the foregoing using the Court's EM/ECF system, which will effect service on all counsel of record.

/s/ Stanley E. Woodward, Jr.

Stanley E. Woodward, Jr.

9