**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| NATIONAL TRUST FOR HISTORIC PRESERVATION, <br><br> *Plaintiff,* <br><br> *v.* <br><br> NATIONAL PARK SERVICE, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:25-cv-04316-RJL |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR AN INDICATIVE
RULING DISSOLVING THE COURT'S INJUNCTION**

The "National Trust for Historic Preservation"—which, again, is not a government agency of any type—never once denies that its lawsuit is motivated by an irrational desire to stop anything associated with President Donald J. Trump, which even Democrat elected officials have labeled as "Trump Derangement Syndrome," or TDS.[1] Plaintiff insists that this suit must move forward despite the three assassination attempts against President Trump in less than two years, including the most recent attempted attack against the President, First Lady of the United States Melania Trump, as well as the President's Cabinet, staff, leading members of the Press, and thousands of guests at the Washington Hilton just a few weeks ago, including the undersigned. Plaintiff refused even to acknowledge the horrific seriousness of that planned massacre, calling it simply the "recent incident at the White House Correspondent's Dinner." Enough is enough. If the Militarily Top Secret Ballroom had been the idea of any other President, no lawsuit would have been filed, let

---

[1] *E.g.*, Senator John Fetterman (@SenFettermanPA) ("[D]rop the TDS and build the White House ballroom."), X, (Apr. 26, 2026, 9:13 AM), https://perma.cc/FLL3-F6KT.

1

alone given rise to an injunction. National Security requires unimpeded construction of the Presidential Ballroom, without disruption or delay.

The assassination attempts make clear what Defendants have been explaining from the start of the case: Presidents need a secure space for significant events, which currently does not exist in Washington, D.C., and this Court's injunction stalling this Project cannot defensibly continue. To ensure construction proceeds, and to conserve judicial resources, this Court should immediately issue a ruling indicating that it would dissolve its injunction at once. The injunction was improper from its inception because Plaintiff lacks standing to bring this suit—and certainly has no grounds to interfere with the National Security by attempting to impose her personal preferences over the security interests of this President, of all Presidents into the future, as well as their families, Cabinets, staff, visitors, and many others.

Plaintiff's opposition brief fails to dispute this fact. The core issue is that the Court, in error, heavily weighed "public interest" in favor of Plaintiff because the Court believed Defendants' National Security concerns were "[g]rasping for straws" and were "bald assertions."  ECF 60 at 33. The Court said: "[A]ccording to Defendants, any construction delay will undermine national security. Please!" *Id.* But after the recent assassination attempt, it is now beyond any doubt that the National Security concerns are legitimate and entirely justified. Moreover, to the extent the Court stated that it would exclude from its preliminary injunction any "construction necessary to ensure the safety and security of the White House," *id.* at 34, it is now crystal clear that *the entire cohesive, integrated, knitted and complex Project* is necessary to ensure National Security and Presidential safety.

As the undisputed evidence demonstrates, the Project is required for National Security. It will protect and shield the East Wing, and provide critical security to all Presidents and their

families, Cabinet, staff, visitors. As Secret Service has stated, the "fixed structure"—constructed using "threat-resistant materials" including missile resistant steel columns, Military grade venting, drone proof ceilings, and bullet, ballistic, and blast proof glass—will form "a fortified structural buffer" protecting "both the main White House and West Wing." Third Quinn Decl. ¶ 10. The Project, which includes a state-of-the-art hospital and medical facilities, Top Secret military installations, bomb shelters, structures, and equipment, protective partitioning, and other features—is fully designed to protect the President. *Id.* This Project as a whole, with one venting system, one electrical system, one plumbing system, one security system, one air conditioning and heating system and, very importantly, one structural system, will ensure that events like the assassination attempt of Butler, PA, West Palm Beach, FL and at the Washington Hilton on April 25th do not happen again. *See* Quinn Decl. ¶¶ 15-16, 20-21.

Plaintiff does not even attempt to argue otherwise—except by quoting a few platitudes that suggest security concerns do not impact the merits, and disrespectfully downplaying the attempted assassination of President Trump, Mrs. Trump, and many others. ECF 80 at 1. But the public interest—and more specifically, the National Security concerns therein—was crucial to the Court's ruling Further, for all the reasons Defendants have previously explained, Plaintiff's merits arguments fail. None of this is disputed in Plaintiff's brief.

It also makes no difference that the preliminary injunction has not yet gone into effect. It has still wrongly thrown this critical National Security Project into uncertainty. The entire point of a Rule 62.1 indicative ruling "is to promote judicial efficiency and fairness by providing a mechanism for the district court to inform the parties and the court of appeals how it would rule on a motion made after the district court has been divested of jurisdiction." *Amarin Pharms. Ireland Ltd. v. FDA*, 139 F. Supp. 3d 437, 447 (D.D.C. 2015). Just as "newly discovered evidence"

might warrant an "indicative ruling, thereby allowing the court of appeals to remand the matter to the district court and obviating the need for the appeal," *id.*, new information materially impacting this Court's analysis of the preliminary injunction factors has that effect here.

Given that the Court appeared to view the public interest in National Security as effectively dispositive, at least as to the scope of relief, the Court must now revisit its ruling and save judicial and party resources. Presidents—not just President Trump, but all future Presidents—should not be forced to risk the safety of themselves, their families, and their Cabinet, all because of one person thinks that the Ballroom may not make her happy. This Court must address that undeniable fact in the first instance, rather than await the D.C. Circuit's resolution of an appeal concerning an injunction that is now clearly overcome by events.

Bereft of legal arguments, Plaintiff resorts to accusations that Defendants made erroneous statements to the Court. But it is Plaintiff who makes false claims. For example, it says Defendants' brief "makes no legal argument and implies that none is needed." ECF No. 80 at 1. That is wrong. Defendants' brief directly quoted and cited the relevant legal standard (Rule 62.1) and then cited numerous Supreme Court, D.C. Circuit, and district court opinions confirming that the Court's injunction should be dissolved here. *Id.* at 3-7. Defendants' motion certainly provided far more "legal argument," than Plaintiff's so-called "opposition."

Plaintiff lobs other meritless accusations, for example claiming it was "false" for Defendants to have stated that "[t]here is absolutely no argument that a woman walking her dog in the vicinity of the White House has STANDING to stop such a desperately needed structure…" Plaintiff is apparently unfamiliar with figures of speech and rhetorical devices. Plaintiff is also unfamiliar with reading closely. Defendants' statement is 100% true, given that even someone walking their dog would not have standing here. Plaintiff's other accusations of "false" statements

4

are also baseless. For example, plans and images of the Ballroom were presented to the National Capitol Planning Commission, and Plaintiff never claims that it was not present or could not otherwise view or attend that presentation. And Plaintiff *was* asked not to bring and prosecute this suit—just look at the numerous briefs where Defendants have strongly and convincingly argued about the National Security interests and demanded that Plaintiff drop this suit, including as recently as the day after an assassin attempted to murder dozens of officials and members of the public. *See* Definition of "Bring," Merriam-Webster Dictionary ("to convey, lead, carry, or cause to come along with one toward the place from which the action is being regarded").

Plaintiff falsely claims that Defendants' motion includes "ad hominem attacks," ECF No. 80 at 1, but not one such "attack" is specifically identified. Plaintiff never disputes its lawsuit is motivated by Trump Derangement Syndrome. To the extent Plaintiff means the reference to Attorney Craig, nobody can dispute that he served as White House Counsel for "Barack Hussein Obama," *Strunk v. U.S. Dep't of State*, 693 F. Supp. 2d 112, 113 (D.D.C. 2010) (Leon, J.). It is interesting that Plaintiff might consider that relationship to be an "ad hominem" attack.

That fact is also relevant to the merits here because it is further evidence that rank political bias led to this meritless, dangerous lawsuit being filed. A bipartisan chorus of legislators, analysts, and media pundits have agreed the Ballroom is needed more than ever. The Ballroom is a gift to the People of the United States and to future Presidents. Plaintiff's frivolous suit should be dismissed, and the Court should indicate that it would dissolve its injunction and allow construction of this vital for National Security Project to be completed without any risk of hindrance.

May 14, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

R. TRENT MCCOTTER
Principal Associate Deputy Attorney General

*/s/      Stanley E. Woodward, Jr.*
Associate Attorney General

U.S. Department of Justice
950 Pennsylvania Avenue, Northwest
Washington, D.C. 20530
stanley.woodward@usdoj.gov
(202) 514-2000

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on this date I filed the foregoing using the Court's CM/ECF system, which will effect service on all counsel of record.

/s/    *Stanley E. Woodward, Jr.*
STANLEY E. WOODWARD, JR.